MELINDA HAAG(CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7241
   Facsimile: (415) 436-7234
   owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>KENNETH MARTIN KYLE,<br><br>       Defendant. | CR 10-0245 JSW<br><br>**THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br>Date: January 19, 2011<br>Time: 9:00am<br>Place: Courtroom 11, 19th Floor |

**INTRODUCTION**

Defendant Kenneth Kyle basis his suppression motion on two arguments.  First, Kyle claims that the government should have limited its border search exclusively to contraband, and that anything found during the search that is not contraband should be suppressed.  Second, Kyle claims that the search of his cellular phone was too attenuated from the border because he alleges that it commenced six days later.

Both of Kyle's claims lack merit.  His challenge to the scope of the border search is legally wrong, chiefly because it is based on cases discussing administrative searches – such as airport security screening – rather than border searches, and administrative searches are governed by completely different legal rules.  The Supreme Court has held that border searches are reasonable simply by virtue of the fact that they occur at the border, and has limited them only in cases involving destruction of property or particular intrusive searches, such as body cavity searches.

Kyle's claim that the search of his cellular phone was too attenuated from the border to be a border search is based on a misunderstanding of the facts.  Kyle's phone was searched as he crossed customs at the airport.  It was then detained and a forensic search was begun the next day.  The initial search was justified as a border search, and the forensic analysis that followed it was justified as an extended border search.

The Court should deny Kyle's motion.  Kyle does not request an evidentiary hearing, and the United States agrees that none is necessary to decide his motion.

**STATEMENT OF FACTS**

Defendant Kenneth Kyle has been charged in five counts of a six-count indictment with aggravated sexual abuse of a minor, production of child pornography, distribution of child pornography, transportation of child pornography, and possession of child pornography, in violation of 18 U.S.C. §§ 2241(c), 2251(a), and 2252(a).

The United States alleges that Kyle met his co-defendant, Tessa Van Vlerah, on a fetish website in early 2009, and began a sexual relationship with her in order to gain access to her infant daughter so that he could create child pornography depicting himself and Van Vlerah

sexually abusing the infant.[1]  Kyle, at the time an assistant professor at Hayward State University, traveled repeatedly from his home in San Francisco to Van Vlerah's home in St. Louis, sexually abused Van Vlerah's infant daughter, and took numerous pictures of the abuse.  Kyle's abuse came to light when the FBI – as part of an undercover operation targeting child pornography distributors who used a "members only" peer-to-peer file sharing network – identified Kyle as a distributor of child pornography featuring the sexual abuse of toddlers and infants.

      The FBI passed this information on to the San Francisco Police Department, who obtained and executed a search warrant at Kyle's home.  During the search, the police learned that Kyle was out of the country, and informed Customs & Border Protection of this fact.  When Kyle returned to the United States through San Francisco International Airport, Customs inspectors found child pornography featuring infants and toddlers on his laptop computer, and sexually suggestive outgoing text messages to Van Vlerah on Kyle's cellular phone.  Kyle was arrested at the airport on state child pornography charges.  ICE agents investigated the text messages to Van Vlerah because they appeared to be directed to a minor, but later learned that Van Vlerah, while an adult, was depicted with her infant daughter in a large collection of child pornography on Kyle's computers.  Van Vlerah, currently in the custody of state authorities in St. Louis, has confessed to her and Kyle's sexual abuse of her baby daughter, who is in protective custody.

      While at Customs, Kyle admitted to a CBP officer that he had downloaded child pornography to his computer using file-sharing software.  Nogales Decl., Exhibit 1.  After the CBP officer had searched Kyle's computer and cellular phone, and Kyle had made this admission, the CBP officer detained the computer and cellular phone for a more detailed forensic analysis.  *Id*.  The analysis of Kyle's cellular phone began the next day, when an ICE forensic analyst documented the cellular phone's information.  *Id*., Exhibit 2.  The day following that, the ICE forensic analyst extracted data from the phone, and located 147 text messages.  *Id*.  The next

---

[1] The factual allegations that follow are a summary of facts sworn to in the Search Warrant Affidavit of ICE Special Agent Analisa Nogales, which Kyle has attached as an exhibit to his motion.

USA'S OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 10-0245 JSW        2

day after that, the ICE forensic analyst provided a printout of these text messages to ICE Special Agent Analisa Nogales, who reviewed them immediately. *Id.* at ¶4. She reviewed the messages again after Kyle was arrested in order to identify the recipient of some sexually suggestive messages that appeared to be directed to a minor. *Id*.

Kyle does not appear to contest that the initial searches of his computer (and, as will be discussed below, his cellular phone) took place at a border, or the functional equivalent of a border, and are thus governed by border search rules.

## ARGUMENT AND AUTHORITIES

### I. THE GOVERNMENT DID NOT EXCEED THE SCOPE OF A PROPER BORDER SEARCH.

#### A. The Fourth Amendment Does Not Limit Border Searches as Kyle Contends.

The Supreme Court has held that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonably simply be virtue of the fact that they occur at the border," and has found this principle so obvious as to require "no extended demonstration." *United States v. Ramsey*, 431 U.S. 606, 616 (1977). The Supreme Court noted that this power dates back to 1789 and has persevered through this Country's history. *Id*. at 617. The Supreme Court more recently reaffirmed the government's paramount interest in searching people and property at the border in *United States v. Flores-Montano*, 541 U.S. 149, 155 (2004), where it rejected the Ninth Circuit's attempt to reserve border search authority to "routine" searches, and noted that border searches of property may be limited to searches "so destructive as to require a different result." *Id*. at 156. Simply put, "the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Id*. at 154.

This broad grant of authority does not square with Kyle's narrow view of border search authority under which agents may only search for contraband with blinders turned toward everything else. Indeed, the Ninth Circuit has expressly rejected this position. In *United States v. Seljan*, 547 F.3d 993, 1002 (9th Cir. 2008), the defendant made the same argument that Kyle makes here; namely, that customs officers did not have the authority to read his correspondence

during a border search because the package in which the correspondence was found did not contain contraband or undeclared currency, and that the border search should have been limited to those ends. *Id.*

The Ninth Circuit flatly rejected this argument, noting that personal correspondence is not uniquely protected from search at the border. *Id.* at 1003. The critical fact, in the Ninth Circuit's view, was that the envelope containing the correspondence crossed the border into this Country, and that having done so its search became reasonable under the Fourth Amendment. *Id.* Furthermore, as the Ninth Circuit noted, the statutory authority allowing customs inspectors to perform border searches does not limit them from looking at anything that is not contraband or undeclared currency, and the Fourth Amendment does not require customs inspectors to disregard evidence of other unlawful activity, "even if the unlawfulness had nothing to do with transporting unreported monetary instruments."

Kyle's position that the border search in this case should have been limited purely to a search for contraband is thus directly contrary to recent Ninth Circuit authority, and inconsistent with decades of Supreme Court authority. The government had every right to search Kyle's laptop and cellular phone at the border, and their search was not limited solely to contraband.

**B.     Kyle Has Confused Administrative and Border Searches.**

Kyle's position that his border search exceeded its proper scope is based chiefly on precedent addressing the validity of administrative searches, not border searches. Though both types of searches may occur at an airport, they are distinct types of searches that are governed by different legal rules. An airport security screening search, such as the routine search for weapons that all airline passengers must undergo, is an example of an administrative search. *See United States v. Aukai*, 497 F.3d 955, 957 (9th Cir. 2007) ("We have previously held that such airport screening searches are constitutionally reasonable administrative searches."). A customs search such as that undergone by Kyle is a border search. *E.g., Seljan*, 547 F.3d at 999 ("The customs search at the Oakland FedEx regional sorting facility took place at the functional equivalent of the border. It should, therefore, be analyzed as a border search.").

USA'S OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 10-0245 JSW                4

The two key Ninth Circuit decisions on which Kyle relies for the proposition that evidence of a crime discovered during a border search that is not contraband must be suppressed – *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973) and *United States v. $124,570 in U.S. Currency*, 873 F.2d 1240 (9th Cir. 1989) – are administrative search cases, not border search cases. An administrative search is "conducted as part of a general regulatory scheme in furtherance of an administrative purpose," such as an airport security check. *$124,570 in U.S. Currency*, 873 F.2d at 1243. As such, an administrative search must be limited to the furtherance of its administrative purpose, such as, for example, a search for weapons. *Aukai*, 497 F.3d at 960. And to pass constitutional muster, an administrative search for weapons in an airport must be "no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives" and must be confined in good faith to that purpose. *Id*. at 962.

Border searches, because they are justified by a different need, do not suffer from the same limitation. As the Supreme Court and Ninth Circuit have noted in the cases discussed above, border searches are reasonable because they take place at the border, and are limited only if they are excessively intrusive (with respect to a person) or particularly destructive (with respect to property). *See Flores-Montano*, 541 U.S. at 155. The Court should reject Kyle's attempt to re-define a border search as an administrative search.

## II. THE SEARCHES OF KYLE'S CELL PHONE WERE PROPER BORDER AND EXTENDED BORDER SEARCHES.

### A. Kyle's Cellular Phone was Searched at the Border.

Kyle briefly complains that the search of his cell phone was too "attenuated from a border entry search" because – he alleges – it was conducted "at least 6 or 7 days after Mr. Kyle entered the country." Kyle's Motion at 7.[2] This argument is based on a misunderstanding of the facts.

---

[2] Although Kyle's argument does not specify the cell phone at this point in his brief, his factual summary concedes that Kyle's laptop was searched at the border crossing, and then alleges that the cellular phone was searched on March 21, six days later. *See* Kyle's Motion at 4.

1   Customs Inspector Mejia searched Kyle's cellular phone at the airport customs inspection area, at
2   the same time that he searched Kyle's laptop.  Nogales Decl., ¶2.  After the laptop search yielded
3   child pornography and Kyle had admitted to downloading child pornography, Mejia detained
4   both the laptop and the cellular phone for further inspection.  *Id*. and Exhibit 1.  The very next
5   day, Inspector Mejia delivered the cellular phone to the ICE forensics lab in San Francisco for
6   forensic analysis.  *Id*. at ¶3.  The forensic analyst documented the cell phone's information that
7   same day, and one day later extracted the text messages from the phone.  *Id*.  He delivered the
8   text messages to Special Agent Nogales one day after that.  *Id*.  She reviewed the text messages
9   that same day.  *Id*. at ¶4.

10       Kyle has apparently seized on a statement by Nogales in her search warrant affidavit that
11   she "researched" the text messages on March 21 – six days after Kyle's border inspection – in
12   order to determine whether Kyle was texting a minor victim, and claims that this was the first
13   government search of the phone.  Kyle's Motion at 4.  But as the narrative above shows, this was
14   not the first time that the phone was searched.  Indeed, it was searched while Kyle was still at
15   customs.

16       The Court should reject Kyle's argument that his cellular phone was searched for the first
17   time six days after he crossed the border, because that just isn't so.

18       **B.**    **Subsequent Analysis of the Phone Was a Proper Extended Border Search.**

19       Under well-established Ninth Circuit authority, customs officers may conduct a more
20   intrusive search at a time and place that is removed from the actual border crossing if they have
21   reasonable suspicion that the subject of the search was involved in criminal activity.  *United*
22   *States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985).  The Ninth Circuit has not delineated a
23   specific time frame in which an extended border search must take place, although the Fifth
24   Circuit has held that 6 days was not too long, and a district court in Arizona has suggested that a
25   "month or two" might be too long.  *Id*. at 736 (*citing United States v. Martinez*, 481 F.2d 214
26   (5th Cir. 1973); *United States v. Cotterman*, 2009 WL 465028, *6 (D. Ariz. 2009)).  The Ninth
27   Circuit has held that a nine-day delay between the time that customs agents reasonably suspected
28   that a package contained contraband and their search of the package fell within the bounds of a

proper extended border search. *United States v. Sahanaja*, 430 F.3d 1049, 1054 (9th Cir. 2005).

In this case, it should be beyond dispute that Customs Inspector Mejia had sufficient reasonable suspicion that Kyle was involved in criminal activity to detain Kyle's cellular phone and laptop for an extended border search. He had already found extremely graphic child pornography on Kyle's laptop, he knew from the FBI that Kyle had been distributing child pornography via the internet, and Kyle had admitted to him that he had downloaded child pornography. The subsequent forensic analysis of Kyle's cellular phone began only one day later, all 147 text messages were recovered just one day after that, and Special Agent Nogales read the text messages the next day. Given the time frames for extended border searches that the Ninth Circuit has upheld in previous cases, and that this Court upheld in *United States v. Hanson*, 2010 WL 2231796, *4 (N.D. Cal. 2010). Indeed, even Agent Nogales' second review of the text messages, conducted three days later, is part of a reasonable extended border search according to this Court's and the Ninth Circuit's precedent.

The Court should hold that Agent Nogales' search of the text messages on Kyle's phone, performed three days after he crossed the border, was a proper extended border search justified by reasonable suspicion.

## CONCLUSION

The evidence that Kyle seeks to suppress was all discovered pursuant to proper border and extended border searches. For the reasons stated herein, the Court should deny his motion to suppress.

DATED: December 10, 2010                    Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney


                                            _____/s/_____
                                            OWEN P. MARTIKAN
                                            Assistant United States Attorney

USA'S OPPOSITION TO MOTION TO SUPPRESS
CASE NO. CR 10-0245 JSW                     7