United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-00245-1 JSW |
| Plaintiff, | **ORDER DENYING MOTION TO SUPPRESS** |
| v. | |
| KENNETH M. KYLE, | |
| Defendant. / | |

Now before the Court for consideration is the Motion to Suppress Evidence filed by Defendant Kenneth M. Kyle ("Kyle"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and has had the benefit of oral argument. There are no material facts that are in dispute and, therefore, the Court concludes that an evidentiary hearing is not necessary. For the reasons set forth in the remainder of this Order, the Court HEREBY DENIES Kyle's motion.

**BACKGROUND**

Kyle is charged with aggravated sexual abuse of a minor, production of child pornography, distribution of child pornography, transportation of child pornography, and possession of child pornography, in violation of 18 U.S.C. §§ 2241(c), 2251(a), and 2252(a). These charges stem from an FBI investigation and the discovery, in December 2009, that "an individual using the online moniker 'CruelSOB' ... was distributing images and videos of child pornography over a peer-to-peer file sharing network," and that the IP address for the individual using this moniker was associated with an internet account billed to Kyle. (*See* Declaration of

David M. Biegeleisen, Ex. 1 (Affidavit in Support of Search Warrant ("Affidavit"), ¶ 13).)

The FBI passed this lead to the San Francisco Police Department, which executed a state search warrant at Kyle's residence on March 10, 2010, and apparently found child pornography on "electronic media" located in the residence. (*Id.*, ¶ 14; *see also* Declaration of Special Agent Annalisa Nogales ("Nogales Decl."), ¶ 2, Ex. 1 ("SEACATS Report" at 4).) During that search, the police were advised that Kyle was out of the country. The FBI then alerted Customs and Border Protection to that fact. (Affidavit, ¶ 14.)

On March 15, 2010, Kyle arrived at San Francisco International Airport on a flight from Frankfurt, Germany. (*Id.*, ¶ 15; SEACATS Report at 3.) CPB Officers Mejia and Lubs stopped Kyle for a secondary baggage screening and located a cell phone and a laptop, which Kyle identified as his own. (Affidavit ¶ 15; SEACATS Report at 4.) Because of the tips from the SFPD and because Kyle "was exhibiting nervous behavior, shifting body weight, had fidgety hands and had a flushed face," CBP Officer Mejia requested permission to conduct a media examination of Kyle's laptop and cell phone. (SEACATS Report at 4.) CPB Officer Mejia found images of child pornography on Kyle's laptop but "no prohibited media files were found" on the cell phone. (*Id.* at 4-5; Affidavit, ¶ 15.) Because the CPB Officers located child pornography on Kyle's laptop, they sought and obtained approval to detain both the laptop and the cell phone for further examination. (SEACATS Report at 6.) In response to questions posed by CPB Officer Mejia, Kyle admitted that he was aware that he had images of child pornography on his laptop. (*Id.*) On that same date, the SFPD arrested Kyle on state child pornography charges. (Nogales Decl., ¶ 2; SEACATS Report at 6.)

On March 16, 2010, Kyle's laptop and cell phone were transported to the Immigrations and Customs Enforcement Laboratory ("ICE lab"), where ICE Special Agent/Forensic Agent Sacramento examined the laptop. Special Agent Sacramento viewed the images, determined they were child pornography and advised Officer Mejia to seize the laptop and cell phone. (*Id.* at 7; *see also* Affidavit, ¶ 16.) Between March 16, 2010 and March 18, 2010, Special Agent Sacramento examined Kyle's cell phone and extracted text messages from the phone, which were provided to Special Agent Nogales on March 18, 2010. (Nogales Decl., ¶ 3, Ex. 2.)

2

1 Agent Nogales attests that she examined the text messages on the day she received them from
2 Agent Sacramento, March 18, 2010, and that she also reviewed them again on March 21, 2010,
3 after Kyle had been arrested on federal charges.  (Nogales Decl., ¶¶ 3-4; Affidavit, ¶¶ 19-20.)
4 Kyle now moves to suppress the evidence obtained from the searches conducted
5 between March 15, 2010 and March 18, 2010, of his laptop and cell phone and all fruits thereof.
6 (*See* Mot. at 2:1-10.)

## ANALYSIS

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." U.S. Const. amend IV.  In general, a search conducted without a warrant, as is the case here, is considered unreasonable, unless it is justified by an exception.

**A.    The Searches at San Francisco Airport on March 15, 2010 Were Valid Border Searches.**

One exception to the warrant requirement is a search conducted at the international border, which is by its "very nature reasonable under the Fourth Amendment, and require[s] neither a warrant, probable cause, nor even articulable suspicion." *United States v. Alfonso*, 759 F.2d 728, 733-34 (9th Cir. 1985) (citations omitted)); *see also United States v. Romm*, 455 F.3d 990, 996 (9th Cir. 2006).  "Searches of international passengers at American airports are considered border searches because they occur at the 'functional equivalent of a border.'" *United States v. Arnold*, 533 F.3d 1003, 1006 (9th Cir. 2009) (quoting *Almeida-Sanchez v. United States*, 413 U.S. 266, 273 (1973)).

It is undisputed that CBP Officers conducted an initial search of Kyle's laptop at the San Francisco Airport and, during that search, discovered images of child pornography on the laptop. (Affidavit, ¶ 15.)  Kyle argues, however, that when the CPB Officers searched his computer and cell phone for e-mails, text messages and a record of his telephone calls, they exceeded the permissible scope of a border search because they were not searching for contraband.  The Court finds Kyle's argument unpersuasive and his reliance on *United States v.*

1  *Davis*, 482 F.2d 893 (9th Cir. 1973) and *United States v. $124,570 U.S. Currency*, 879 F.2d
2  1240 (9th Cir. 1989) to be misplaced.

3  Each of those cases involved airport screening searches, rather than a search conducted
4  at the international border, or its functional equivalent, where "the Fourth Amendment balance
5  between the interests of the Government and the privacy right of the individual is ... struck
6  much more favorably to the Government ...." *United States v. Montoya de Hernandez*, 473 U.S.
7  531, 539 (1985). There is nothing in the evidence to show that the CPB Officers destroyed any
8  of Kyle's property, that they conducted a "highly intrusive" search of his person, or that they
9  conducted any of the searches in a "particularly offensive manner." *See, e.g. United States v.*
10 *Seljan*, 547 F.3d 993, 1002 (9th Cir. 2008) (upholding search of Federal Express package,
11 which included reading correspondence found therein, as valid border search).

12 Accordingly, the Court concludes that the searches conducted on March 15, 2010 were
13 valid border searches.

14 **B.    The Searches on March 16 through 18, 2010 Were Valid Extended Border Searches.**
15

16 On March 16, 2010 and March 17, 2010, ICE agents and forensic analysts conducted
17 more detailed searches of Kyle's laptop and cell phone. (*See* Affidavit, ¶¶ 16-17; Nogales
18 Decl., ¶¶ 2-3, Exs. 1 and 2.) "The 'extended border' doctrine ... permits the Government to
19 conduct border searches some time after the border has been crossed." *United States v.*
20 *Caicedo-Guarnizo*, 723 F.2d 1420, 1422 (9th Cir. 1984); *see also United States v. Cotterman*,
21 2009 WL 465028, at * 5 (D. Ariz. Feb. 24, 2009). In contrast to a search conducted at the
22 border, or its functional equivalent, an extended border search must be supported by
23 "'reasonable suspicion' that the subject of the search was involved in criminal activity, rather
24 than simply mere suspicion or no suspicion." *Alfonso*, 759 F.2d at 734. In order to determine
25 whether the search was supported by reasonable suspicion, the Court examines the totality of
26 the circumstances, such as the time and distance elapsed, whether there was a lapse in
27 surveillance, and the diligence of law enforcement. *Id*. at 735 (citing *Alexander v. United*
28 *States*, 362 F.2d 379, 382 (9th Cir. 1966)); *see also Cotterman*, 2009 WL 465028, at *6.

4

In *Cotterman*, the defendant and his wife arrived at the border, and the border inspectors discovered that he had a previous conviction for child sex crimes. They therefore subjected him subjected to a secondary inspection, during which agents examined his laptop, learned that certain files were password protected, but did not locate any contraband. *Cotterman*, 2009 WL 465028, at *2. Although the defendant offered to assist agents with the password protected files, they declined, seized the laptop, took it approximately 170 miles from the border, and searched it for two days before they located images of child pornography. *Id.*

Because the agents did not find contraband while the laptop was located at the border and, in light of the time and distance that elapsed before the search continued, the court concluded that the search should be analyzed as an extended border search. *Id.* at *4. The *Cotterman* court concluded that the agents did not have reasonable suspicion to seize and search the defendant's laptop, on the basis that the defendant's prior conviction and the fact that files were password protected did not give rise to a reasonable suspicion that the laptop contained contraband. *Id.* at *7.

The Court concludes that, considering the totality of the circumstances, the searches on March 16, 2010 through March 18, 2010 were valid extended border searches. ICE personnel conducted these searches at the ICE Lab in San Francisco, one and two days after Kyle had crossed the border, and after he had been arrested on state charges. Thus, the searches were both close in time and in geographic distance from the border, which distinguishes this case from *Cotterman*. As noted, by March 16 and March 17, CPB Officers already had discovered images on child pornography on Kyle's laptop during the initial border search. Further, when confronted with this fact by CPB Officer Mejia, Kyle admitted to having downloaded images of child pornography to his computer. (SEACATS Report at 6.) In light of these facts, the Court concludes that the searches conducted on March 16 through March 18, 2010 were supported by reasonable suspicion.

Kyle argues that the search of the cell phone was too attenuated to qualify as an extended border search, because it occurred on March 21, 2010. However, the record demonstrates that CBP Officer Mejia first searched the phone on March 15, 2010, that Special

5

Agent Sacramento searched the phone the next day. The record also demonstrates that Special Agent Sacramento extracted data from the phone on March 17, 2010, printed text messages on March 18, 2010, and provided them to Agent Nogales on March 18, 2010, who reviewed them that day. (Nogales Decl., Exs. 1, 2.) Accordingly, the Court finds that the search of the cell phone and the review of the text messages is a valid extended border search supported by reasonable suspicion.[1] Kyle again argues that the scope of the search exceeded the permissible scope of an extended border search, because the text messages did not qualify as "contraband." The Court again finds this argument unpersuasive. *See Seljan*, 547 F.3d at 1004 (rejecting defendant's argument that agents were required "to disregard evidence of other unlawful activity, even if the unlawfulness had nothing to do" with the initial purpose of conducting the search).[2]

**CONCLUSION**

For all of the foregoing reasons, Kyle's motion to suppress is DENIED.

**IT IS SO ORDERED.**

Dated: January 19, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[1] At the hearing on the motion, Kyle directed the Court's attention to *United States v. Soto Soto*, 598 F.2d 545 (9th Cir. 1979.) The Court finds that case distinguishable on its facts. First, the search at issue was conducted by an FBI agent, rather than a member of the United States Customs' service. Second, it was undisputed that the FBI agent's *sole* purpose for stopping the defendant was for general law enforcement purposes. *See Soto Soto*, 598 F.2d at 549-50.

[2] Kyle's final argument is that the Government failed to comply with the procedures outlined in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) and *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th Cir. 2009) ("*CDT*"). The Court concludes that, on the facts of this case, the guidelines provided in that opinion do not apply to the searches conducted on March 15, 2010 through March 18, 2010, which are the only searches at issue in this motion. The Court notes that the Affidavit in support of the federal search warrant for Kyle's home refers to the CDT Procedures, and Kyle has presented no evidence that the Government did not comply with those procedures when searching the computer media seized as a result of that warrant.