Volume 1
Pages 1 — 36

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,           )
                                )
  vs.                            )   NO. CR CR 10-245 JSW
                                )
KENNETH MARTIN KYLE,             )
                                )   San Francisco, California
            Defendant.           )   Thursday,
                                )   March 8, 2012
_____)   2:17 p.m.


TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

For Plaintiff:          MELINDA L. HAAG
                        United States Attorney
                        450 Golden Gate Ave.
                        San Francisco, California  94102
                   BY:  OWEN PETER MARTIKAN
                        Assistant United States Attorney


For Defendant:          DAVID MICHAEL BIGELEISEN LAW OFFICE
                        101 Howard Street
                        Suite 310
                        San Francisco, California  94105
                   BY:  DAVID MICHAEL BIGELEISEN, ESQ.


Also Present:           CHARLES MABIE, U.S. PROBATION

Reported by  BELLE BALL, CSR 8785, RMR, CRR
            Official Reporter, U.S. District Court

1   **THURSDAY, MARCH 8, 2012**                                    **2:17 P.M.**

2                        P R O C E E D I N G S

3            **THE CLERK:**  Calling Criminal Case No. 10-245, United

4   States of America versus Kenneth Martin Kyle.

5            **MR. MARTIKAN:**  Good afternoon, Your Honor.  Owen

6   Martikan for the United States.

7            **THE COURT:**  Good afternoon.

8            **MR. BIGELEISEN:**  Good afternoon, Your Honor.  David

9   Michael Bigeleisen for Mr. Kyle.

10           **THE COURT:**  Good afternoon.

11           (Reporter interruption)

12           **MR. MABIE:**  And Charlie Mabie, U.S. Probation.

13           **THE COURT:**  Welcome, sir.

14           I'm advised that the Defendant is on a different

15   floor, so it might be a couple of minutes.

16           (A pause in the proceedings)

17           (Defendant present)

18           **THE COURT:**  All right, Mr. Kyle has arrived.

19           Good afternoon, Mr. Kyle.

20           Good afternoon, Mr. Kyle.

21           **THE DEFENDANT:**  Good afternoon.

22           **THE COURT:**  All right.  So, just to kind of review

23   where we are, the Defendant previously entered a guilty plea

24   pursuant to an 11(c)(1)(C) plea agreement.  And, the Court

25   ordered a presentence report.

```
1              And upon receiving the presentence report, the Court
2   told the Defendant -- notified the Defendant and counsel that
3   it was rejecting the agreement, and the amount agreed to.  The
4   parties had agreed to a sentence of 30 years.  360 months.  The
5   Court felt that was too lenient, and ordered that the case go
6   to trial, essentially.
7              I have been advised by a letter and a proposed plea
8   agreement -- by a letter from the Government that a new and
9   different plea agreement was reached, with a different -- a
10  different disposition agreed to by the parties.  And, the --
11  another (c)(1)(C) plea agreement.
12             And, I will say that based upon this letter, which is
13  dated February 14th, 2012, which -- may I assume, is it
14  correct, Mr. Bigeleisen, that you received a copy of the
15  letter?
16             MR. BIGELEISEN:  Yes, of course, Your Honor.
17             THE COURT:  And, have gone over that with Mr. Kyle?
18             MR. BIGELEISEN:  Yes, yes.
19             THE COURT:  All right.  And, I think the Government
20  makes a persuasive argument as to why the Court should accept
21  the new plea agreement.  And, I'm inclined to do so at this
22  point.
23             I won't do it until after I have, obviously, queried
24  the Defendant about the new plea agreement.
25             So, first things first.  Has the Defendant executed
```

1   the new agreement?

2           **MR. BIGELEISEN:**  Yes.

3           **THE COURT:**  Okay.  Would you hand it up to the Court,

4   please.

5           **MR. MARTIKAN:**  Well, I -- I think that -- that's the

6   one Your Honor has.  I have another copy which --

7           **MR. BIGELEISEN:**  I have only one copy, Your Honor.

8           **MR. MARTIKAN:**  Let me -- let's reexecute the whole

9   thing.

10          **MR. BIGELEISEN:**  Okay.

11          (Document signed)

12          (Document handed up to the Court)

13          **THE COURT:**  So, I have the executed plea agreement.

14          It would be the Court's view, and inclination, to --

15  that it -- not to have a completely full-blown -- a

16  reexamination of the Defendant under Rule 11, because we did a

17  very extensive colloquy the last time.  We'd go with some other

18  matters, especially with respect to the new agreement.

19          But, I would like to hear what -- what's the

20  Government's view on that?  Is the Court required to do a

21  complete superseding plea colloquy?

22          **MR. MARTIKAN:**  Your Honor, I know this was done

23  very -- in great detail last time.  I think the Court should go

24  over essentially the whole plea colloquy, to make sure there's

25  an explicit waiver of rights.

```
 1              I think there may be some issues we perhaps can go
 2    over in a little less detail.  But I -- I think I would
 3    actually ask that we go over the whole waiver of rights.
 4              THE COURT:  What is your view, Mr. Bigeleisen?
 5              MR. BIGELEISEN:  I think that would be the right
 6    thing to do, Your Honor.
 7              THE COURT:  All right, then that's what we will do.
 8              All right.  Would you please swear the Defendant?
 9              (Defendant placed under oath)
10              THE COURT:  All right.  So, you understand, sir, that
11    you are under oath?
12              THE DEFENDANT:  Yes, sir.
13              THE COURT:  All right.  Would you speak into the
14    microphone?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  Okay.  And so, you must tell the truth.
17              Do you understand?
18              THE DEFENDANT:  Yes, sir.
19              THE COURT:  And if you lie to the Court, you could
20    receive additional penalties.
21              THE DEFENDANT:  Yes, sir.
22              THE COURT:  I'm going to ask you some questions about
23    the -- to make sure you knowingly and voluntarily and
24    intelligently, with the advice of your attorney, want to enter
25    a guilty plea.  And I'm going to ask you some questions about
```

1  the crime you are pleading guilty to, and you will be required

2  to answer those questions.

3          **THE DEFENDANT:**  Yes, sir.

4          **THE COURT:**  And, any time you need or want to talk to

5  Mr. Bigeleisen, please do so.  If you don't understand any

6  question that I ask you, let me know, and I'll rephrase it.

7          **MR. BIGELEISEN:**  Your Honor, may I please have just a

8  moment with Mr. Kyle before we proceed?

9          **THE COURT:**  Sure.

10         (Off-the-Record discussion between Defendant and

11         Counsel)

12         **MR. BIGELEISEN:**  Thank you very much, Your Honor.

13         **THE COURT:**  What's your full name?

14         **THE DEFENDANT:**  Kenneth Martin Kyle.

15         **THE COURT:**  How old are you?

16         **THE DEFENDANT:**  I'm 47.

17         **THE COURT:**  How far did you go in school?

18         **THE DEFENDANT:**  Ph.D.

19         **THE COURT:**  In what subject?

20         **THE DEFENDANT:**  I'm sorry?

21         **THE COURT:**  In what subject did you get your Ph.D.?

22         **THE DEFENDANT:**  Justice studies.

23         **THE COURT:**  Justice studies.  Where was that?

24         **THE DEFENDANT:**  Arizona State University.

25         **THE COURT:**  So, I assume you can read and write

1    English, correct?

2              THE DEFENDANT:  Yes, sir.

3         THE COURT:  And, before coming to court today, have

4    you had any medications or drugs?

5              THE DEFENDANT:  My normal.

6         THE COURT:  Well --

7              THE DEFENDANT:  My normal medications.  Nothing above

8    and beyond.

9         THE COURT:  Nothing that would prevent you from

10   understanding what's going on?

11             THE DEFENDANT:  That's correct, Your Honor.

12        THE COURT:  Have you been treated recently for any

13   mental illness or addiction to narcotic drugs?

14        THE DEFENDANT:  I'm having mental-health counseling,

15   but it's nothing that's going to preclude me from making a

16   sound judgment.

17        THE COURT:  All right.  And, you agree with that,

18   Mr. Bigeleisen?

19             MR. BIGELEISEN:  I believe so.  He's being treated

20   for depression, Your Honor.

21        THE COURT:  All right.  Are you sick in any way?

22        THE DEFENDANT:  No, Your Honor.

23        THE COURT:  What do you think is happening here

24   today?

25             THE DEFENDANT:  I am going to be going through a plea

1  agreement that we've negotiated, and I will acknowledge that in

2  fact I've agreed to it, of my own free will.

3          **THE COURT:**  I'm sorry?

4          **THE DEFENDANT:**  Of my own free will.

5          **THE COURT:**  And, you understand that you're offering

6  another guilty plea, because I allowed to you withdraw the

7  previous one?

8          **THE DEFENDANT:**  Yes, sir.

9          **THE COURT:**  All right.  If you don't -- if you

10 continue to enter a not-guilty plea, which you are allowed to

11 do, you would have the right to a jury.

12          Do you understand that?

13          **THE DEFENDANT:**  I understand.

14          **THE COURT:**  And, that would be a jury consisting of

15 12 citizens of this district?

16          **THE DEFENDANT:**  I understand.

17          **THE COURT:**  And their decision would have to be

18 unanimous before they can convict you?

19          **THE DEFENDANT:**  I understand.

20          **THE COURT:**  And you would have the right to counsel

21 at this trial.  And if you couldn't afford one, the Court would

22 appoint one, and the government would pay for that attorney.

23          **THE DEFENDANT:**  I understand.

24          **THE COURT:**  And you understand you have a right to

25 waive counsel.

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  And you have a right to represent

3  yourself.

4          **THE DEFENDANT:**  I understand.

5          **THE COURT:**  And at this trial, you would be presumed

6  innocent, and the burden would be on the Government to prove

7  your guilt beyond a reasonable doubt.

8          Do you understand?

9          **THE DEFENDANT:**  Yes, sir.

10          **THE COURT:**  And the Government would have to call

11  witnesses in order to convict you, and to prove their case

12  beyond a reasonable doubt, they would have to call witnesses to

13  this court.

14          Do you understand?

15          **THE DEFENDANT:**  I understand.

16          **THE COURT:**  And you understand you have a right to

17  see those witnesses, and confront them, and cross-examine them.

18          Do you understand that?

19          **THE DEFENDANT:**  Yes, I do.

20          **THE COURT:**  And you also have a right to remain

21  silent during the trial, which means that you don't have to do

22  anything during the trial.

23          Do you understand?

24          **THE DEFENDANT:**  I understand.

25          **THE COURT:**  And do you understand, nobody can comment

1  on your failure to say or do anything?

2         **THE DEFENDANT:**  Yes, sir.  I understand.

3         **THE COURT:**  And the fact that you chose to exercise

4  this right, again, would never be held against you.  You

5  understand that.

6         **THE DEFENDANT:**  I understand.

7         **THE COURT:**  But, on the other hand, after consulting

8  with your lawyer, you may decide that you do call witnesses,

9  yourself or other witnesses, or any -- any evidence or any

10 witness allowed by law.

11        Do you understand that?

12        **THE DEFENDANT:**  Yes, sir.

13        **THE COURT:**  And if you had witnesses or evidence that

14 were not available to you, you could use the subpoena powers of

15 the Court to compel those witnesses to come here.

16        Do you understand that?

17        **THE DEFENDANT:**  I understand that, sir.

18        **THE COURT:**  But the -- the facts and the rights that

19 I've told you about would never change the burden of proof at

20 trial.

21        Do you understand that the Government always bears

22 the burden of proving your guilt on each of the charges brought

23 against you?

24        **THE DEFENDANT:**  Yes, Your Honor.

25        **THE COURT:**  And you understand that by entering a

 1  guilty plea, you give up your right to have a trial?

 2           **THE DEFENDANT:**  Yes, Your Honor.

 3           **THE COURT:**  And you are convicting yourself by your

 4  guilty plea today.

 5           **THE DEFENDANT:**  Yes, Your Honor.

 6           **THE COURT:**  And you understand there will be no

 7  trial, in fact, if I accept your guilty plea.

 8           **THE DEFENDANT:**  Yes, Your Honor.

 9           **THE COURT:**  Now, has anyone threatened you in any way

10  in order to enter a guilty plea?

11           **THE DEFENDANT:**  No, Your Honor.

12           **THE COURT:**  Are you pleading guilty to protect

13  anyone?

14           **THE DEFENDANT:**  No, Your Honor.

15           **THE COURT:**  Has anyone promised you anything, other

16  than in this plea agreement that's been presented to the Court?

17           **THE DEFENDANT:**  No, sir.

18           **THE COURT:**  Are you pleading guilty of your own free

19  will, because you are, in fact, guilty?

20           **THE DEFENDANT:**  Yes, Your Honor.

21           **THE COURT:**  Now, did you have an opportunity to go

22  over this plea agreement with your attorney?

23           **THE DEFENDANT:**  Yes, I did.

24           **THE COURT:**  Now, in this plea agreement -- I'm going

25  to summarize this briefly, because you've read it, and you're a

1  smart guy.  You've got a Ph.D.  But, this is a legal document,

2  and I want to make sure you understand it.

3          So, in this new plea agreement, you agree to plead

4  guilty to Count 1 of the indictment, which charges you

5  aggravated sexual abuse with children, in violation of 18

6  U.S.C. § 2241(c)(1).  And, we'll get into the elements which

7  you acknowledge in this case.

8          And, you acknowledge your understanding of the

9  maximum sentence which the Court may impose, which is a prison

10 sentence of a minimum of 30 years, maximum of life; and a

11 maximum fine of $250,000; a supervised release term of a

12 minimum of five years and a maximum of life; a mandatory

13 special assessment of $100; and restitution to be determined by

14 the Court.  And, registration as a sex offender.

15         You acknowledge your guilt in the case, and certain

16 facts that prove your guilt.  And, we'll get into those in a

17 moment.

18         You agree to give up all the rights that you would

19 have as this case went to trial.  They're all listed in here.

20         Did you go over those with your attorney?

21         **THE DEFENDANT:**  Yes, we did.

22         **THE COURT:**  And, you understand all of those rights?

23         **THE DEFENDANT:**  Yes, sir.

24         **THE COURT:**  And, you give up your right to appeal any

25 aspect of your sentence or your conviction.

1          **THE DEFENDANT:**  I understand, yes.

2          **THE COURT:**  And you give up your right to bring a

3  separate appeal to this Court on any ground other than that

4  your right to the effective assistance of counsel was violated.

5          Do you understand that?

6          **THE DEFENDANT:**  Yes, Your Honor.

7          **THE COURT:**  And you agree not to ask the Court to

8  withdraw your guilty plea at any time after it's entered,

9  unless the Court refuses -- declines to accept the sentence

10 agreed to by the parties.

11         You agree the Government may withdraw from the

12 agreement if the Court does not accept the sentence set forth

13 in this case, or in this plea agreement.

14         And you agree that if the Court -- you further agree

15 to not ask the Court for any continuance of your sentence.  If

16 I accept your plea agreement, you'll be sentenced today.  So,

17 that's not really an issue.

18         You agree that your sentence should be calculated

19 under the sentencing guidelines, which are not binding on this

20 Court, and under the sentencing statute in such a way that your

21 adjusted offense level is 41.

22         And you understand -- is there an understanding --

23 there's been a calculation as to the guideline -- the criminal

24 history category.  Is that correct?

25         **MR. MARTIKAN:**  Yes, Your Honor.  It's not agreed, but

1    it was calculated in the presentence report, and the parties

2    did not object to that.

3               **THE COURT:**  Which is a 1.

4               **MR. MARTIKAN:**  Which is a 1, yes, sir.

5               **THE COURT:**  So, a Level 41 at Criminal History

6    Category 1, the Defendant would be -- the guideline sentence

7    would be 324 to 405 months.

8               Has your lawyer explained that that's the guideline

9    exposure?

10              **THE DEFENDANT:**  Yes, Your Honor.

11              **PROBATION OFFICER MABIE:**  Um --

12              **THE COURT:**  And, you agree that a reasonable and

13   appropriate disposition of this case -- meaning the sentence --

14   under the guidelines and under the sentencing statute, which is

15   called 18 U.S.C. 3553(a), is as follows:  A sentence of no less

16   than 405 months but no longer than 450 months imprisonment; ten

17   years of supervised release with conditions to be fixed by the

18   Court; a $100 special assessment; and a $50,000 restitution.

19              Is that your agreement with the Government?

20              **THE DEFENDANT:**  Yes, it is.

21              **THE COURT:**  All right.  You agree to forfeit certain

22   items that are listed in the plea agreement, and not to contest

23   the forfeiture of those, which are alleged to be

24   instrumentalities used in committing the crime that you are

25   admitting to today.

1           And, you agree that this agreement contains all of

2  the promises and agreements between you and the Government, and

3  you will not claim otherwise in the future.

4           That this agreement binds only the U.S. Attorney's

5  office for the Northern District of California and the Eastern

6  District of Missouri, and does not bind any other federal,

7  state, or local agency.

8           Now, the Government has made certain promises to you.

9  They agree to move to dismiss any open charges against the

10 Defendant, in the indictment, at the time of sentencing.

11          The Eastern District of Missouri agrees to dismiss

12 the pending charges against you in *U.S. v. Kyle,* the cases

13 listed there in the Eastern District of Missouri, after your

14 sentence.

15          Am I correct, Mr. Martikan, there's no agreement with

16 respect to the state charges?

17          **MR. MARTIKAN:**  That's correct, Your Honor.

18          **THE COURT:**  And, you understood that?

19          **THE DEFENDANT:**  Yes, sir.

20          **THE COURT:**  All right.  And, the Government agrees

21 not to file any additional charges against you that could have

22 been filed as a result of the investigation in this case.

23          They further agree that the sentence I summarized

24 before is what they -- what their -- is reasonable and

25 appropriate.

```
 1              And, they agree to recommend that the term of

 2  imprisonment run concurrently with any sentence imposed on you

 3  arising out of the currently-pending state charges in

 4  St. Louis.

 5              And, that's the state case, correct?

 6              MR. MARTIKAN:  Correct.

 7              THE COURT:  All right.  And, you understood that?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  And, you've confirmed that you understand

10  this agreement, and have entered into it freely and

11  voluntarily.  And, that your conviction under this agreement

12  will require you to register as a sex offender.

13              Have I adequately summarized -- or accurately

14  summarized the agreement, sir?

15              THE DEFENDANT:  Yes, Your Honor.  Can I ask real

16  quick, one moment, my --

17              THE COURT:  Any time you want.

18              (Off-the-Record discussion between Defendant and

19              Counsel)

20              THE DEFENDANT:  Very good, Your Honor.

21              THE COURT:  All right.  Now, has anyone made any

22  other promises to you outside of this agreement?

23              (Off-the-Record discussion between Defendant and

24              Counsel)

25              THE DEFENDANT:  No, Your Honor.
```

1          **THE COURT:**  All right.  Any doubt about that?

2   Because if there are, I don't know about them.  And, I'm not

3   bound by them.

4          **THE DEFENDANT:**  No, Your Honor.

5          **THE COURT:**  All right.  Now, Mr. Bigeleisen, I'm

6   going to ask you some questions about the agreement.

7          Does your signature appear on Page 6?

8          **MR. BIGELEISEN:**  Yes, it is, Your Honor.

9          **THE COURT:**  Have you discussed this agreement

10  thoroughly and completely with Mr. Kyle, including the

11  provision for waiver of appeal?

12         **MR. BIGELEISEN:**  Yes.

13         **THE COURT:**  Have you answered all of his questions

14  about the plea agreement?

15         **MR. BIGELEISEN:**  I believe I have.

16         **THE COURT:**  All right.  In your opinion, does

17  Mr. Kyle understand the agreement completely, including the

18  provision for waiver of appeal?

19         **MR. BIGELEISEN:**  Yes.

20         **THE COURT:**  Do you agree with those answers?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Now, you understand that you're pleading

23  guilty to a felony, and therefore, you will be deprived of

24  certain civil rights relating to the possession of firearms?

25         **THE DEFENDANT:**  Yes.

1          **THE COURT:**  And you may be deprived of other rights,

2   such as the right to vote, hold public office, or serve on a

3   jury?

4          **THE DEFENDANT:**  I understand.

5          **THE COURT:**  Now, you understand I have a right to

6   reject this plea agreement, and impose -- and allow you to go

7   to trial.

8          Do you understand that?

9          **THE DEFENDANT:**  I understand, sir.

10         **THE COURT:**  And I will let you, as I did before,

11  withdraw your guilty plea.

12         **THE DEFENDANT:**  I understand.

13         **THE COURT:**  All right.  Now, have you and

14  Mr. Bigeleisen talked about how the guidelines might apply to

15  your case?

16         **THE DEFENDANT:**  I'm sorry --

17         **THE COURT:**  Have you and Mr. Bigeleisen talked about

18  how the guidelines might apply to your case?

19         **THE DEFENDANT:**  Yes, we have, Your Honor.

20         **THE COURT:**  Do you understand that the sentence, the

21  -- any sentence imposed may be different from any estimate that

22  your lawyer may have given to you, ultimately?

23         Do you understand that?

24         (Off-the-Record discussion between Defendant and

25         Counsel)

1          **THE COURT:**  Well, what it means is let's say I reject

2   the plea agreement, and let's say you go to trial, or you

3   negotiate a different agreement that is not binding on the

4   Court.  Ultimately, the Court may give you a higher sentence.

5          Do you understand that?

6          **THE DEFENDANT:**  Right, but the agreement we have here

7   (Indicating) restricts the Court, correct?

8          **THE COURT:**  If I accept the agreement.

9          **THE DEFENDANT:**  If you accept it.  Yes, Your Honor.

10  I understand.

11         **THE COURT:**  If I don't accept it, then --

12         **THE DEFENDANT:**  Right.

13         **THE COURT:**  -- the statute is the limit.

14         **THE DEFENDANT:**  I understand.

15         **THE COURT:**  All right.  And, do you understand that

16  under our system, parole has been abolished, and if you're

17  sentenced to prison, you will not be released on parole?

18         **THE DEFENDANT:**  I understand, Your Honor.

19         **THE COURT:**  All right.  Have you received a copy of

20  the indictment in this case that you are pleading guilty to?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Do you understand what you are charged

23  with?

24         **THE DEFENDANT:**  Yes, Your Honor.

25         **THE COURT:**  Tell me in your own words what you think

1    you are charged with.

2            **THE DEFENDANT:**  I'm -- in August of 2009 --

3            **THE COURT:**  I'm just asking -- not the facts, but

4    charges.

5            **THE DEFENDANT:**  Oh, I'm sorry.  Yes, Your Honor.  I

6    have been accused of going to Missouri, engaging in a lewd act

7    with a child.

8            **THE COURT:**  All right.  Mr. Martikan, would you

9    please present the elements of the charged offense.

10           **MR. MARTIKAN:**  Thank you, Your Honor.

11           The elements of a violation of Title 18 United States

12   Code § 2241(c), Aggravated Sexual Abuse with Children, are that

13   the Defendant knowingly crossed a state line, the first

14   element, and two, with the intent to engage in a sexual act

15   with a person who had not attained the age of 12.

16           **THE COURT:**  All right.  And, do you understand that

17   the maximum penalty that can be imposed under the statute are

18   the ones that I summarized; include up to life imprisonment?

19           **THE DEFENDANT:**  Yes, Your Honor.

20           **THE COURT:**  And, do you understand that the Court is

21   also required to order you to make restitution to any victim

22   who may have sustained a loss, unless the Court gives specific

23   reason not to do so?

24           **THE DEFENDANT:**  I understand.

25           **THE COURT:**  And I take it, since the Government has

1  received letters from the representatives of the victim and

2  therapist of the victim, that the Government has done its duty

3  under the Victim Rights Act.

4          **MR. MARTIKAN:**  That's correct, Your Honor.

5          **THE COURT:**  All right.  And, do you understand that

6  if the Court sentences you to conditions of supervised release,

7  and you violate any of those, you can get additional time in

8  jail?

9          **THE DEFENDANT:**  I understand, Your Honor.

10         **THE COURT:**  So, do you understand all of the

11 consequences of your plea?

12         **THE DEFENDANT:**  Yes, Your Honor.

13         **THE COURT:**  Now, because we don't want anybody

14 pleading guilty who's not guilty, and who doesn't believe

15 they're guilty, I want to ask you:  Did you commit the crime

16 you're pleading guilty to?

17         **THE DEFENDANT:**  Yes, Your Honor.

18         **THE COURT:**  Tell me what you did that makes you

19 guilty.

20         **THE DEFENDANT:**  I arranged a flight to Missouri from

21 here.  I went to Missouri with the intention of performing a

22 lewd act with a child.  And, in fact, I did.

23         **THE COURT:**  So, you raped an infant, didn't you?  And

24 you made movies out of it.

25         **MR. BIGELEISEN:**  Your Honor --

1            **THE COURT:**  Did you do that, or not?

2            **MR. BIGELEISEN:**  Your Honor, I don't think that those

3  -- those --

4            **THE COURT:**  I want to know what he did.

5            **MR. BIGELEISEN:**  I understand.

6            **THE COURT:**  Did you rape an infant?

7            (Off-the-Record discussion between Defendant and

8            Counsel)

9            **THE DEFENDANT:**  I don't --

10            (Off-the-Record discussion between Defendant and

11            Counsel)

12            **MR. BIGELEISEN:**  Your Honor, may I speak for

13  Mr. Kyle, please?

14            **THE COURT:**  You may, for the moment, but I'm going to

15  want to hear from him or I'm not accepting his plea.

16            **MR. BIGELEISEN:**  I understand, but I want --

17            **THE COURT:**  I don't want this sugar-coated.  I want

18  the Record to show exactly what this man did.

19            **MR. BIGELEISEN:**  Right.  Your Honor, I don't think

20  the word "rape" accurately describes what he did.

21            **THE COURT:**  So, you're saying the infant consented to

22  being sexually assaulted?

23            **MR. BIGELEISEN:**  No.  I do not say that.  But, I'm

24  saying that the act that he did I do not believe is described

25  as an act of rape.  But, he may describe the act.

1        **THE COURT:**  Describe the act.

2        **THE DEFENDANT:**  Um, God.  Um, the child -- sorry,

3  Your Honor.  The child's mouth was on my penis.  And, and I

4  ejaculated on the child's stomach.

5        **THE COURT:**  All right.  And you traveled to Kansas to

6  do this?

7        **THE DEFENDANT:**  To Missouri, sir.

8        **THE COURT:**  Missouri.  Okay.  All right.

9        All right.  I'm now going to ask the Government to

10  indicate what it would prove beyond a reasonable doubt, because

11  even though you've admitted to facts that would make you

12  guilty, you're not guilty unless they can prove it.

13        So, I want you to hear one last time what the

14  Government can prove, beyond a reasonable doubt.

15        **MR. MARTIKAN:**  Thank Your Honor.

16        If this case were to go to trial, the Government

17  would be able to prove beyond a reasonable doubt that in

18  August, 2009, and on several other occasions that year, the

19  Defendant traveled from San Francisco to St. Louis, Missouri,

20  and crossed the state line in doing so, and did so with the

21  intention of engaging in a sexual act with a minor whom he knew

22  was younger than 12.  In fact, an infant.

23        And that he, in fact, did engage in sexual --

24        **THE COURT:**  How old was the child?

25        **MR. MARTIKAN:**  -- acts.  During -- in August, 2009,

1   the child would have been five months old, Your Honor.

2           THE COURT:  All right.

3           MR. MARTIKAN:  So, at least on that occasion, did

4   engage in a sexual act with a child who was approximately five

5   months old.

6           THE COURT:  All right.  Anything else?

7           MR. MARTIKAN:  No, Your Honor.

8           THE COURT:  All right.  You heard what the Government

9   said it can prove if the case went to trial, did you?

10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Are those facts true and substantially

12  correct?

13          THE DEFENDANT:  Substantially correct, yes, sir.

14          THE COURT:  All right.  Are you pleading guilty

15  because you are, in fact, guilty of the offense?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Now, you have been represented by

18  Mr. Bigeleisen, is that correct?

19          THE DEFENDANT:  That's correct.

20          THE COURT:  And, has he provided you with all of the

21  legal advice that you have needed or wanted?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And, are you satisfied with your legal

24  representation by Mr. Bigeleisen?

25          THE DEFENDANT:  Yes, Your Honor.

1          **THE COURT:**  All right.  Do you need to obtain any

2   further advice from him at this point?

3          **THE DEFENDANT:**  I don't believe so.

4          **THE COURT:**  All right.  So, with all of the

5   consequences of pleading guilty in mind, how do you plead to

6   Count One of the indictment, which charges you with aggravated

7   sexual abuse with children, in violation of 18 U.S.C.

8   § 2241(c)?  Guilty, or not guilty?

9          **THE DEFENDANT:**  Guilty, Your Honor.

10          **THE COURT:**  All right.  The Court accepts the

11   Defendant's plea, finding that the Defendant has knowingly and

12   voluntarily and intelligently, with the advice of his attorney,

13   entered a guilty plea.

14          The Court further finds that the elements required to

15   support a conviction under the charged statute have been

16   satisfied.

17          The Court further finds that there is a sufficient

18   factual basis to support the plea.

19          Therefore, the Court accepts the guilty plea, and

20   also thereby does accept the plea agreement, and agrees to

21   sentence the Defendant in accordance with it.

22          Although -- although it's a close question, and the

23   Court does so reluctantly, I think the Government makes a very

24   persuasive case about why the sentence is appropriate, all

25   things considered, and especially considering the victim in

1   this case.

2          So, I do accept the plea agreement, and I will

3   sentence the Defendant in accordance with that.

4          Is there anything -- there's an issue of range.  The

5   parties have agreed to a range.

6          What does the Government have to say about

7   sentencing?

8          **MR. MARTIKAN:**  Your Honor, in a general manner, the

9   Government will submit.

10          I think a range -- a sentence within the range is

11   clearly reasonable.  I think a sentence in the middle that

12   range is a reasonable sentence, although any sentence would be

13   reasonable within that range.

14          **THE COURT:**  All right.  Mr. Bigeleisen, anything you

15   would like to say at this point?

16          **MR. BIGELEISEN:**  Yes.  I would like to begin by

17   saying that Mr. Kyle's almost 48 right now.  And, if the Court

18   sentences Mr. Kyle to the low end of the range, he will be an

19   old man when he's released from prison.  If the Court sentences

20   him to anything more than that, he will still be an old man.

21          The indication that we have is that he may very well

22   not live that long.  That having been said, Mr. Kyle is

23   affording the grace to the Court, to the Government, and

24   particularly to the child, by deciding to plead guilty rather

25   than to proceed to trial.

1          And, one of the graces that he's providing is not

2    making a record of the conduct.  And I think that that is

3    important to the child because as she grows up, she need not be

4    informed, unless she wishes to be, of that which has

5    transpired.

6          We are now looking forward.  And I -- and this, I

7    want to share with the Court, is something that Mr. Kyle

8    presented to me.  This is not my authorship.  It's Mr. Kyle's

9    authorship.  And that, I think, is important.

10          That having been said, the low end of the range also

11    reflects the very highest end of the sentencing guidelines.

12    And the sentencing guidelines, of course, reflect all of the

13    considerations which the Court considers in the sentencing

14    statute.

15          The Court did express some opinions earlier in this

16    case about what its sentiments were.  And the range that has

17    been presented to you takes those things into account.

18          It is very difficult to imagine that Mr. Kyle will

19    encounter this child again during the lifetime of any of the

20    people who are here in this courtroom.  And so, I don't think

21    that that is a present danger.

22          In addition to that, shortly before Mr. Kyle's

23    release from the federal penitentiary, he will be examined

24    under the Adam Walsh Act.  And if it's determined that he

25    presents a public menace at that time, then he will still be

1  confined.  So, I think that those are things which the Court

2  should consider.

3      The Court also has Dr. McAndrews' report.  And we

4  presented that to you, because I think all of us have wondered:

5  What is it that is within Mr. Kyle, and what is it that has

6  brought him to be before you in this way?  And, it's not

7  offered as an excuse, but an explanation.  And I think that

8  that helps all of us.

9      That having been said, nobody here says that the

10 Court's rebuke in this case is not appropriate.  This certainly

11 does call for rebuke.  It calls for a strong rebuke.

12     The statutory minimum of 30 years is a strong rebuke.

13 The 405 months, which is the bottom end of the plea agreement

14 and the top end of the guideline, is also a strong rebuke.

15     And with that, we ask the Court not to look to the

16 high end of what has been agreed upon, but to consider all of

17 these things, and to view this either at the low end of the

18 range or the middle.

19     **THE COURT:**  All right.  Mr. Kyle, this is your

20 opportunity to address the Court.

21     **THE DEFENDANT:**  Your Honor, I would acknowledge what

22 I've done.  What I did was wrong, Your Honor; I know it.  I'm

23 -- I'm ashamed.  I offer no excuses.

24     I want to apologize to everyone who's had the

25 misfortune of learning what I've done.  It's a really negative

1  dark shadow out in people's minds.  And I would take it back if

2  I could, but I can't.

3         I would like to apologize to my victim and to her

4  family, if I could.  And I would like to assure them that they

5  did nothing to prompt me to act.  I'm -- they are blameless.

6  The acts were mine, and mine, alone.

7         I also want to apologize to my family, and to my

8  friends, and ask their forgiveness for not having the strength

9  of character to reach out for them and ask for their help and

10  guidance before things went awry and I ended up where I am now.

11  I've caused them shame and embarrassment, and it's not their

12  fault, either.  It is only my own.

13         I accept responsibility, and I'm ready to take my

14  punishment, sir.

15         **THE COURT:**  All right.  Thank you, sir.

16         All right, so, the Court has this case for

17  sentencing.  Obviously, the parties have agreed to a sentence

18  which certainly is -- would constitute -- could constitute a

19  variance from the guideline, the nonbinding guideline range.

20  And, the Court obviously starts with what the guidelines talk

21  about.

22         The Court -- the salient factors under 3553(a) that

23  the Court needs to consider in this case which I think run

24  closely together are the nature and circumstances of the

25  offense.  The offense in this case is shocking beyond anything

1    that this Court has ever experienced in any aspect of its life,

2    and is -- is an abomination.  I just can't express strong

3    enough how bad what you did is.

4        And although there are people who the Court sentences

5    every day who had really difficult upbringings, and sometimes

6    that's a justification for what they did, you were a college

7    professor, a Ph.D.  Somebody in a position of trust.  A college

8    professor in the Bay area.

9        And some of the things that are described in the

10   presentence report, some of the other things that are involved

11   as to which you haven't objected, some of the fantasies that

12   you have had about doing things with babies, including killing

13   them, those things which are not contested, and the pictures

14   that you had on your computer when the computer was seized, and

15   every -- and the quantity of pictures and all of that makes

16   this one of the most shocking crimes that I can even imagine to

17   be perpetrated on a helpless infant, who will suffer all of her

18   life.

19       And, I did review the letters from her adoptive

20   mother and from her therapist.  And frankly, it made me sick.

21       And although there are factors in the guidelines --

22   and one of the factors that the guidelines don't take into

23   account is pure evil.  And I think what you did is pure evil.

24   And -- and I hope that you don't survive in prison.

25       And, the only reason I'm agreeing to the sentence

1   that's been agreed to by you and the Government is because of

2   what the Government states, is sparing the child the trial that

3   I originally ordered in this case, so that you could have a

4   life sentence.

5            So, the sentence of this Court is as follows.

6            **MR. MARTIKAN:**  Excuse me, Your Honor.  Just, maybe

7   it's a technicality, but it has substantive impact.

8            The Court did not actually explicitly find the

9   offense level in the criminal history range.  We all agreed

10  that a --

11           **THE COURT:**  Well, it's 41.  I mentioned in the plea

12  colloquy that it's 41, and a Criminal History Category of 1.

13           Correct?

14           **MR. MARTIKAN:**  Yes.

15           **THE COURT:**  Do you agree with that?

16           **MR. BIGELEISEN:**  Yes, Your Honor.

17           Your Honor, I would also like to remark that --

18           **THE COURT:**  We're not in the argument mode.

19           **MR. BIGELEISEN:**  Oh, thank you.

20           **THE COURT:**  The Government is correct that

21  procedurally, if I had not already done so -- and I thought I

22  had -- the Ninth Circuit requires that I state on the Record

23  the correct calculation.  And, I've done so.

24           Pursuant to the Sentencing Reform Act, it is the

25  judgment of the Court that Kenneth Martin Kyle is hereby

1  committed to the custody of the Bureau of Prisons, to be

2  imprisoned for a term of 450 months.

3         Upon release from imprisonment, the Defendant shall

4  be placed on supervised release for a term of ten years.

5         Within 72 hours of release from the custody of the

6  Bureau of Prisons, the Defendant shall report in person to the

7  Probation Office in the district to which the Defendant is

8  released.

9         And, the following specific conditions are imposed:

10        One, the Defendant shall submit to a search of his

11  person, property, house, residence, vehicle, papers, computer,

12  other electronic communication or data storage devices or

13  media, and effects at any time, with or without a warrant, by

14  any law enforcement or probation officer with reasonable

15  suspicion concerning unlawful conduct or a violation of a

16  condition of probation or supervised release.

17        Failure to submit to such a search may be grounds for

18  revocation.  The Defendant shall warn residents that the

19  premises might be subject to search.

20        And, by the way, the sentence imposed by the Court is

21  concurrent with any sentence issued by the state court pursuant

22  to the plea agreement.  The state court in Missouri.

23        Two, Defendant shall register with the state sex

24  offender registration agency in any state where the Defendant

25  resides, is employed, carries on a vocation, or is a student,

1    as directed by the Probation Officer.

2             The Defendant shall provide proof of registration to

3    the Probation Officer within seven days of release from

4    imprisonment.

5             Three, Defendant shall participate in a sex offender

6    treatment program, as directed by the Probation Officer.  The

7    Defendant shall abide by all rules, requirements and conditions

8    of such program, including, but not limited to, polygraph.

9             The Probation Officer shall disclose the presentence

10   report and/or any previous mental health evaluations or reports

11   to the treatment provider.

12            Four, Defendant shall not possess any materials

13   including pictures, photographs, books, writings, drawings,

14   videos or video games depicting and/or describing child

15   pornography as defined in 18 United States Code § 2256(8).

16            Five, Defendant shall not contact the victim by any

17   means, including in person, by mail or electronic means, or via

18   third parties.

19            Further, Defendant shall remain at least 100 yards

20   from the victim at all times.  If any contact occurs, the

21   Defendant shall immediately leave the area of contact, and

22   report the contact to the Probation Officer.

23            Six, Defendant shall not associate or have any

24   verbal, written, telephonic or electronic communication with

25   any person under the age of 18, except, A, in the presence of

the parent or legal guardian of said minor, and B, on the

condition that the Defendant notify said parent or legal

guardian of his conviction in the instant offense or in the

current offense.

This provision does not encompass persons under the

age of 18 such as waiters, cashiers, ticket vendors, with whom

the Defendant must deal with in order to obtain ordinary and

usual commercial services.

Defendant shall not possess or use a computer or

computer-related devices, including, but not limited to,

personal computers, personal data systems, Internet appliances,

electronic games, and cellular telephones, as well as their

peripheral equipment, that can access or can be modified to

access the Internet, electronic bulletin boards, and other

computers or similar media with access to any online service at

any location, including his place of employment.

This includes access through any Internet service

provider, bulletin board system or any public or private

computer network system.

Defendant shall not have another individual -- have

another individual access the Internet on his behalf, to obtain

files or information which he has been restricted from

accessing, himself, or accept restricted files or information

from any person.

Eight, Defendant shall not own or possess any

```
 1  firearms, ammunition, destructive devices or other dangerous
 2  weapons.
 3          Nine, the Defendant shall cooperate in the collection
 4  of DNA, as directed by the Probation Officer.
 5          It is further ordered that the Defendant shall pay to
 6  the United States a special assessment of $100, which shall be
 7  due immediately.
 8          Payments of monetary payments -- monetary penalties
 9  are due during imprisonment at the rate of not less than
10  $25 per quarter.  And, payment shall be through the Bureau of
11  Prisons Inmate Financial Responsibility Program, at the address
12  set forth in the presentence report recommendation.
13          It is further ordered that the Defendant shall pay
14  restitution to the victim, via the adopted mother.  And the
15  name of the victim and adopted mother will be provided to the
16  Clerk of the Court under separate cover, and the name shall be
17  sealed.  And, that $50,000 shall be due immediately.
18          And during incarceration, the payment will be at a
19  rate of not less than $25 per quarter, and shall be through the
20  same address and program as stated before.
21          As to forfeiture, the Defendant's interest in the
22  listed property on Page 6 of the Probation Officer's
23  recommendation, that property shall be forfeited to the United
24  States.
25          Is there anything further from the Government?
```

1          **MR. MARTIKAN:**  Your Honor, pursuant to the agreement,

2   the Government moves to dismiss Counts 2, 4, 5, and 6 of the

3   indictment.

4          **THE COURT:**  Any objection?

5          **MR. BIGELEISEN:**  No, of course not.

6          **THE COURT:**  Anything further?

7          **MR. BIGELEISEN:**  No, Your Honor.

8          **THE COURT:**  All right.  Well, the Court is going to

9   recommend to the Bureau of Prisons that the Defendant serve his

10  time in a maximum-security institution.

11         All right.  Next case.

12         (Conclusion of Proceedings)

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR 10-245 JSW, United States v. Kenneth Martin Kyle, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_____/s/  Belle Ball_____

Belle Ball, CSR 8785, RMR, CRR

Sunday, July 15, 2012