Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. C 10-245 JSW |
| | ) | |
| KENNETH MARTIN KYLE, | ) | |
| | ) | San Francisco, California |
| Defendant. | ) | Wednesday |
| _____ | ) | January 19, 2011 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          Melinda L. Haag
                           United States Attorney
                           450 Golden Gate Avenue, 11th Floor
                           San Francisco, California  94102
                    **BY:  OWEN MARTIKAN, AUSA**

**For Defendant:**          David M. Bigeleisen Law Office
                           101 Howard Street, Suite 310
                           San Francisco, California 94105
                    **BY:  DAVID M. BIGELEISEN, ESQUIRE**

**Reported By:**     *Katherine Powell Sullivan, CSR #5812*
                   *Official Reporter - U.S. District Court*

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

```
 1                    P R O C E E D I N G S
 2   JANUARY 19, 2011                              9:01 A.M.
 3            THE CLERK:  Calling Case No. CR 10-245, United States
 4   of America versus Kenneth Martin Kyle.
 5       Counsel, please step forward to the podium and state your
 6   appearances.
 7            MR. MARTIKAN:  Good morning, Your Honor.  Owen
 8   Martikan for the United States.
 9            THE COURT:  Good morning.
10            MR. BIGELEISEN:  Good morning, Your Honor.  David
11   Michael Bigeleisen on behalf of Mr. Kyle.  And Mr. Kyle is
12   present in court, as well.
13            THE COURT:  Good morning.
14       Good morning, Mr. Kyle.
15            THE DEFENDANT:  Good morning, Your Honor.
16            THE COURT:  All right.  So we have today the hearing
17   on the motion -- defendant's motion to suppress various
18   evidence.  And I have carefully reviewed the parties' papers
19   and the authorities.
20       And there's really only one issue that hasn't been fully
21   addressed, because it was raised for the first time in reply.
22   And I want to give the government an opportunity to reply, and
23   then give the defendant an opportunity to respond to that
24   argument.
25       And that relates to the *Comprehensive Drug Testing* case,
```

1    which was raised -- and the protocol, which was raised for the

2    first time in the reply.

3        What's the government's position on that?

4            **MR. MARTIKAN:**  Well, the position is that it

5    doesn't -- it shouldn't affect the outcome of the motion, for

6    several specific reasons, and that depend on which -- which

7    piece of evidence the protocol is applied to.

8        First of all, there is a laptop computer that was subject

9    to a federal search warrant that specifically incorporated the

10   protocol.  So I think that would be out of the picture.

11           **THE COURT:**  For the record, which one was that?

12           **MR. MARTIKAN:**  That was the laptop that was seized

13   from the defendant's apartment after his arrest.

14           **THE COURT:**  All right.  So this one --

15           **MR. MARTIKAN:**  Sometime after his arrest.

16           **THE COURT:**  This one postdated the search at the

17   airport.

18           **MR. MARTIKAN:**  Correct.  Yes, Your Honor.

19           **THE COURT:**  All right.

20           **MR. MARTIKAN:**  Then there is a -- there's the

21   computer that was seized from defendant's apartment before his

22   arrest.  That was done pursuant to a state warrant.

23       And the CDT opinion is not a Fourth Amendment opinion,

24   it's a Rule 41 opinion.  So it wouldn't have any application to

25   that search warrant.

1          And, third, there were seizures done at the border which

2     were, of course, not done pursuant to a warrant, and to which

3     CDT would not apply for that reason.

4          So I don't think it applies.  And I guess that's the sum

5     of the government's position at this point.  I think that there

6     are other problems with raising it as an issue since that

7     decision has been subsequently modified to not mandate a

8     protocol.  But that --

9               THE COURT:  You mean to not make it mandatory.

10              MR. MARTIKAN:  To not mandate a protocol, yes,

11    correct.

12              THE COURT:  All right.  Counsel.

13              MR. BIGELEISEN:  Well, Your Honor, I think that the

14    reasoning behind the *Comprehensive Drug Testing* applies to any

15    of the searches that are like the one that we have here.

16         I would say that, as far as the authority of the Customs

17    to conduct a search for contraband, that perhaps the protocol

18    might not apply at the border.

19         However, the cell phone, which is the key to all of the

20    things that have happened thereafter, can be compared to a

21    computer.  And the *Comprehensive Drug Testing*, number one, I

22    believe applies.

23         And then the other thing is that it also amplifies the

24    same other things that we said with regard to the search of the

25    cell phone.  And, of course, the gist of our position with

1  regard to the cell phone, which I'm sure you recognize, is that

2  the search of the cell phone was not a search for contraband,

3  and that the government is limited to searching for contraband

4  on aliens at the border.

5      And so that's -- that's my response to that, Your Honor.

6          **THE COURT:**  All right.  Mr. Martikan, anything else?

7          **MR. MARTIKAN:**  Well, a couple points, Your Honor.

8  Thank you.

9      First of all, the cell phone, of course, was searched at

10 the border and, the government contends, pursuant to a border

11 search and then an extended border search.

12     So to the extent that the Court agrees that that's the

13 context of that search, then it's the same as the laptop.  It's

14 still a border search, not a -- not a warrant search.

15         **THE COURT:**  Defense counsel says that the search is

16 only valid to the extent that contraband and illegal aliens are

17 being sought.

18         **MR. MARTIKAN:**  Correct.  And for the reasons stated

19 in the brief, that's just not the law, Your Honor.  It's not --

20 I think that -- that counsel is drawing on administrative

21 search cases, to which that kind of a limitation might apply,

22 when what we're talking about is a border search, which is a

23 completely different -- guided by completely different

24 authority.

25     And then, finally, I think the question is, what does it

1   mean for CDT to apply to something?  Does it mean that those

2   protocols that were set out in the -- the first *en banc* opinion

3   should apply to these searches?  And I would say not, given the

4   second *en banc* opinion.

5        Second of all, were they even to apply or -- well, I guess

6   the second question is not the protocol, but does the whole

7   issue of CDT apply, which is the problem of sorting protected

8   material from unprotected material.

9        And I don't think the point the defense has raised is that

10  that is an issue in this case.  There hasn't been a problem of

11  protected material having been found or being used against the

12  defendant, as opposed to the contraband.

13       And, second of all, that wouldn't apply in a border -- I

14  think, admittedly, wouldn't apply in a border search context,

15  anyway, since I think the defense concedes that at the border,

16  in order to find contraband or potential contraband, the agent

17  can search anything.

18            **THE COURT:**  All right.  Anything further?

19            **MR. BIGELEISEN:**  Your Honor, I would like to amplify

20  on the distinction between a search for contraband and a search

21  of the cell phone, if the Court wishes to hear further in that

22  regard.

23            **THE COURT:**  Well, very briefly.

24            **MR. BIGELEISEN:**  Okay.

25            **THE COURT:**  It was covered quite well by both sides

1  in their briefs, that you cited your relevant authorities,

2  which I have read and I'm familiar with.

3      MR. BIGELEISEN:  Your Honor, I would like to add one

4  more thing.  And that is, as I was doing my final preparation,

5  I came across one more case which I think is helpful.  And

6  that's *United States versus Soto-Soto*, S-o-t-o-S-o-t-o, at 598

7  F.2d 545.  A 1979 Ninth Circuit case.

8      And, of course, if Mr. Martikan needs more time to review

9  that, I'm happy to afford that.  In *Soto-Soto* -- the *Soto-Soto*

10  case brought up several issues, but one of them was that

11  Mr. Soto-Soto traveled from Mexico into the United States with

12  a Ford truck that the government thought might be within the

13  category of those that were stolen; stopped the truck and

14  examined the serial numbers to determine whether it was a

15  stolen truck.

16      And in one core part of the *Soto-Soto* opinion, the Ninth

17  Circuit said that that was a police investigation, a criminal

18  investigation, and not a search of contraband.  And that was

19  one of the reasons for granting the motion to suppress.  There

20  were several others, as well, but that underscores the matter.

21      As far as the privacy right regarding the cell phone, I

22  didn't think that that was going to be a problem for the Court,

23  but there is the *Hart* case that was decided by Judge Illston.

24      THE COURT:  I'm familiar with that case.

25      MR. BIGELEISEN:  Pardon me?

1          **THE COURT:**  I'm familiar with that case because I

2  just issued an order in another case in which I didn't follow

3  that decision --

4          **MR. BIGELEISEN:**  Okay.

5          **THE COURT:**  -- based upon the California Supreme

6  Court's recent decision in *Diaz*.

7          **MR. BIGELEISEN:**  Right.  And I'm familiar with *Diaz*,

8  as well.  Okay.

9          **THE COURT:**  Right.  And you're obviously not familiar

10  with the Court's decision because it just came out last week.

11          **MR. BIGELEISEN:**  Well, I actually have read the

12  decision, and the California Supreme Court and Judge Illston,

13  of course, part company.

14          **THE COURT:**  As does this Court --

15          **MR. BIGELEISEN:**  Oh, I understand.

16          **THE COURT:**  -- with Judge Illston, although her case

17  is distinguishable, partly --

18          **MR. BIGELEISEN:**  Yes.

19          **THE COURT:**  -- distinguishable on the facts.

20          **MR. BIGELEISEN:**  Right.

21          **THE COURT:**  All right.  Anything further you want to

22  say, Mr. Martikan?

23          **MR. MARTIKAN:**  No, Your Honor.  Although, if the

24  Court is inclined to allow the defense to submit that other

25  opinion, the *Soto-Soto* opinion, I may wish to respond to it.

1          **THE COURT:**  All right.

2          **MR. MARTIKAN:**  Other than that, I don't.

3          **THE COURT:**  All right.  Well, the matter is

4     submitted.  And I will certainly look at the opinion cited by

5     defendant at this hearing, the 1979 opinion, to see whether it

6     changes the Court's mind.  And I will issue a -- a written

7     opinion, an order after this hearing and after reviewing that

8     case, to see whether it's applicable.

9          But I will give the parties my tentative ruling subject,

10    again, to reading this case and to taking under advisement the

11    arguments with respect to the *Comprehensive Drug Testing* case.

12         And having considered all of the arguments of counsel and

13    the motion, the Court -- my current inclination and intention,

14    subject to what I said before, is to deny the motion -- the

15    motion in its entirety, to allow -- not suppress any of the

16    evidence.

17         The Court -- and this will be -- this will be explained

18    more expansively in a written order.  But that the searches at

19    the San Francisco International Airport on March 15th were

20    valid border searches because the government has broad

21    authority to conduct such border searches.

22         And the defendant's argument with respect to the airport

23    search at the airport, that the agents exceeded the permissible

24    scope of a border search because they were searching for

25    contraband, the Court believes that that argument is

1   unpersuasive, and that the cases that the defendant relies on

2   involve airport screening searches rather than a search

3   conducted at the international border or its functional

4   equivalent, where the Fourth Amendment's balance between the

5   interest of the government and the privacy right of the

6   individual is struck much more favorable to the government

7   under the applicable Supreme Court case, which my order will

8   allude to.

9        And so since there's nothing in the evidence to show that

10  the officers or the agents destroyed any of Mr. Kyle's

11  property, that they conducted -- any evidence that they

12  conducted a highly intrusive search of his person, or that they

13  conducted any of the searches in a particularly offensive

14  manner, compels the Court to conclude that the searches were

15  valid border searches.

16       With respect to the searches on March 16th and March 17th,

17  the Court intends to hold that those searches were valid

18  extended border searches and well within the government's

19  authority.

20       I will note that, in contrast to a search conducted at the

21  border or its functional equivalent, an extended border search

22  must be supported by reasonable suspicion by the officers or

23  the agents, that the subject of the search was involved in

24  criminal activity rather than simple mere suspicion or no

25  suspicion.  And that's based upon the totality of the

1   circumstances test.

2       And the Court finds that the government has met the

3   requirements to validate the March 16th and March 17th searches

4   as valid border searches under the totality of the

5   circumstances.

6       With respect to the CDT case, the Court notes that the

7   government is correct that the opinion of the Court, at least

8   as expressed by Chief Judge Kozinski in the original *en banc*,

9   was rendered to be dictum or at least oratory rather than

10  mandatory on the government in the second opinion.

11      In any event, it appears, although I want to study this

12  further, that to the extent there was a federal warrant that

13  was properly -- procedures were properly outlined in the

14  warrant.  And to the extent that there's any binding authority

15  on the government with respect to CDT, my tentative view is,

16  based upon what's in the record and the government

17  representations, is that the government complied.

18      So with that tentatively decided and subject to final

19  review based upon the case cited by -- the *Soto-Soto* case and

20  the government's arguments with respect to CDT, the motion --

21  the Court is tentatively deciding to grant -- to deny the

22  motion to suppress in all respects and will now set a trial

23  date.

24      So get out your calendars, and I want to get this case

25  moving to trial.

```
 1        Defendant is in custody.  We have the Speedy Trial Act.
 2   No time has run off the Speedy Trial Act, so we have to set the
 3   case within 70 days of today.
 4        So, Ms. Ottolini, let's get a date roughly -- subject to
 5   the Court's schedule, sometime within the Speedy Trial Act.
 6        Do you have an exact date, Mr. Martikan?
 7             MR. MARTIKAN:  March 3rd, Your Honor.
 8             THE COURT:  All right.
 9             MR. BIGELEISEN:  Wait, wait.
10             MR. MARTIKAN:  I mean --
11             MR. BIGELEISEN:  March 3rd.
12             MR. MARTIKAN:  We would have a couple days if Your
13   Honor reaches a final written opinion.  But from today would
14   be -- 70 days is March -- did I say 3rd?  March 30th,
15   three-zero.
16             THE COURT:  Ms. Ottolini, what's our schedule?
17             THE CLERK:  So March 28th, at 8:00 a.m. for jury
18   trial?
19             THE COURT:  Yes.
20             MR. BIGELEISEN:  Okay.
21             THE COURT:  And pretrial, Ms. Ottolini?
22             MR. BIGELEISEN:  Just a second.
23             THE COURT:  Okay.
24             THE CLERK:  February 28th, at 2:00 p.m.
25             MR. BIGELEISEN:  May I check my calendar, please?
```

1      **THE COURT:**  Sure.

2      **MR. BIGELEISEN:**  Your Honor, I have another matter

3  set for trial in Marin County on the same date.  It probably

4  will be resolved.  And so --

5      **THE COURT:**  The same date as the trial date?

6      **MR. BIGELEISEN:**  No, on February 28th.  I'm sorry.

7      **THE COURT:**  You're talking about the pretrial?

8      **MR. BIGELEISEN:**  Yes, yes.

9      **THE COURT:**  All right.

10     **MR. BIGELEISEN:**  If the Court is available in the

11 afternoon?

12     **THE COURT:**  That's when we have it.

13     **MR. BIGELEISEN:**  Okay.  I'm sorry.

14     **THE COURT:**  You wouldn't know that.  It's 2 o'clock.

15     **MR. BIGELEISEN:**  That's -- February 28th.

16     **THE COURT:**  If you tell the judge in Marin County,

17 I'm sure you can get over here by --

18     **MR. BIGELEISEN:**  Yes.  Well, it's set for trial, but

19 I will tell the judge and the prosecutor that we have a matter

20 before you.  I'm sure that there'll be some flexibility.

21     **THE COURT:**  All right.

22    Now, let me advise the parties of the following that you

23 should obtain from the Court's website or the clerk's office:

24 The Court's rules with respect to preparing for pretrial and

25 also for trial, because they're quite comprehensive and they

1   have some deadlines that will need to be complied with which

2   are different than the federal criminal rules or the local

3   rules just in terms of being better organized and making better

4   use for the pretrial.

5        What I typically do, counsel, is tentatively pencil in for

6   the Wednesday before we are scheduled to start the trial -- and

7   this might not be possible, counsel, with respect to -- because

8   of your trial schedule, but the jury selection in the morning

9   of the Wednesday before, so that all we do that day is we have

10  the day or however long we need to pick the jury, conduct the

11  voir dire.

12       And then we would -- we wouldn't swear the jury until the

13  following Monday, and then start with preliminary jury charge

14  and instructions and opening statement and testimony.  So we

15  have a clean start to the trial and we actually save an entire

16  day.

17       So that day, Ms. Ottolini, just so counsel can look at

18  their respective calendars?

19           **THE CLERK:**  March 23rd, at 8:00 a.m.

20           **THE COURT:**  And, again, that would be, more than

21  likely, between 8:00 and I would say -- usually we get a jury

22  by, you know, midday, depending on -- this one may take a

23  little longer in light of the issues in the case, the nature of

24  the case.

25       But one of the things that you and counsel -- that counsel

1  will do, because my rules require this, is that you come up

2  with a joint statement -- a neutral joint statement of the

3  case, what the allegations are, what the principal defense is,

4  whatever you want to say to the jury right at the get-go, right

5  at the front end, so that they know what the case is about.

6  And if there are any immediate problems, we can flesh those

7  out.

8       And I will remind the government that the Court

9  strictly -- has strict requirements with respect to 404(b)

10  evidence.  And if there's going to be any, there needs to be

11  early disclosure.

12       Do you anticipate any 404(b) evidence?

13            MR. MARTIKAN:  Yes, Your Honor.

14            THE COURT:  What is the soonest that you would be --

15  in light of the Court's schedule, that you believe you would be

16  able to disclose that to the defendant?

17            MR. MARTIKAN:  Well, given how the Court schedules

18  pretrial motions, what I was hoping is that we would exchange

19  motions in limine and 404(b) notices and the like by the end of

20  this month, January 31st, so that we could formally make our

21  filings by the 14th.

22            MR. BIGELEISEN:  Your Honor, may I address that,

23  please?

24            THE COURT:  Yes.

25            MR. BIGELEISEN:  And that is, this relates to the

1  letter which I wrote to the Court and to Mr. Martikan.

2           **THE COURT:**  Yes.

3           **MR. BIGELEISEN:**  And I'd like to begin by saying that

4  it's actually a considerable comfort to me to be in court this

5  morning and to work on Mr. Kyle's case because it distracts me

6  from my family problems, which is important.

7       My mother is still alive but not for very much longer, and

8  I may be called away quite suddenly.  And, therefore, I'm a

9  little bit concerned about a deadline for the end of this

10 month.  And so perhaps if the Court could be a bit flexible in

11 that regard, it would be appreciated.  I really don't know

12 what's going to happen next.  We -- I thought that I was going

13 to be going to my mother's funeral last week or this.  I know

14 it will happen soon.

15          **THE COURT:**  All right.  Well, and I'm completely

16 sympathetic to what you're saying.  In fact, we've been

17 prepared, if necessary, or upon your request to -- even to

18 continue this hearing, so I'm very sympathetic and willing to

19 work with you.

20      And the other side of the coin is we can't -- you know, I

21 don't want to sound cruel, but we can't just keep the dates

22 open sort of indefinitely.

23          **MR. BIGELEISEN:**  Of course not.

24          **THE COURT:**  You know, life is cruel and --

25          **MR. BIGELEISEN:**  No.

1          **THE COURT:**  -- things happen.  So how much time

2    reasonably do you think we should allow for any, shall we say,

3    eventuality to come up with respect to your mother?

4          **MR. BIGELEISEN:**  Well, in view of the pretrial date

5    of February 28, I don't think that I would be -- I think that

6    perhaps mid February might be more appropriate.

7          **THE COURT:**  For?

8          **MR. BIGELEISEN:**  For the motions in limine and so

9    forth.

10         **THE COURT:**  All right.  Well, that would mean moving

11   the trial back, too, because the Court needs the additional

12   time.  You'll see from my -- pretrials are very comprehensive.

13         **MR. BIGELEISEN:**  Okay.

14         **THE COURT:**  I attempt to squeeze all the air out of

15   the case, the legal issues, so we don't waste the jury's time.

16     So one possibility -- and I'll ask the government and

17   we'll have to figure out the impact of the Speedy Trial Act,

18   but I would imagine it's an appropriate exception for

19   continuity of counsel for personal potential bereavement.

20     What would be your -- I'm thinking about our schedule --

21   the Court's schedule for, let's say, moving everything back by,

22   let's say, two weeks?  That would meet defense counsel's

23   request with respect to accommodating his personal situation.

24         **MR. MARTIKAN:**  That is fine with the government.  But

25   the one thing I would point out, Your Honor, is that that would

```
1   put the pretrial conference on February -- March -- I'm sorry,

2   would put the pretrial conference on March 14th, which is the

3   first day of the Christopher trial, which I have with Your

4   Honor.

5       So -- which, you know, I'm -- still may very well go to

6   trial.  So we could just schedule in that conflict and deal

7   with it, and maybe take a break or do this later in the

8   afternoon on that day so that it --

9           THE COURT:  You mean pick the jury that afternoon?

10          MR. MARTIKAN:  Well, no, I mean, that would be the

11  first day of --

12          THE COURT:  Oh, you're talking -- yes.

13          MR. MARTIKAN:  I just mean we could do the pretrial

14  later in the afternoon.

15          THE COURT:  Absolutely, because I sit from 8:00 to

16  1:30 anyway.

17          MR. MARTIKAN:  Oh, okay.

18          THE COURT:  We can do the pretrial.  I frequently

19  have pretrials while a trial is going on.  Not frequently.  It

20  happens.

21          MR. MARTIKAN:  Okay.

22          THE COURT:  So what if we do that?  Then that will

23  accommodate the Christopher trial.

24          MR. MARTIKAN:  That would not be -- then I don't see

25  a problem with moving everything back two weeks, Your Honor.
```

THE COURT:  All right.  Would that be acceptable to everyone?

MR. BIGELEISEN:  I think so, yeah.

THE COURT:  Ms. Ottolini, would you reset, please.

THE CLERK:  So the pretrial conference would be March 14th, at 2:00 p.m.  The trial date would be April 11th, at 8:00 a.m.  And jury selection would be April 6, at 8:00 a.m.

MR. BIGELEISEN:  And motions in limine, Your Honor?

THE COURT:  Well, if you check the Court's standing order, you'll see that there's a specific time deadline --

MR. BIGELEISEN:  Okay.

THE COURT:  -- that is geared toward the date of the pretrial.  I forget how many weeks.  It's pretty clear.

You can talk to Mr. Martikan after the hearing today and he'll work out the logistics and the detail.

So that would be the day then of any -- in addition to the in limine -- well, wouldn't you need to disclose the 404(b) evidence earlier so that if the defendant wished to address those -- I would say in light of the more relaxed schedule that we move back the deadline to disclose 404(b) evidence for a period of time so that if Mr. Bigeleisen wants to address those in limine with respect to that, he'll have an opportunity.  If he gets it for the first time in the in limine exchange, he's not going to have that opportunity.

MR. MARTIKAN:  Well, then I can stick with the

```
 1   January 31st deadline for just disclosing 404(b) evidence.

 2              THE COURT:  All right.  Does that work for you?

 3              MR. BIGELEISEN:  I think that can be made to work.  I

 4   think the Court's been quite accommodating.

 5        And, needless to say, we don't know what will happen with

 6   my mother, but we're doing the best we can under the

 7   circumstances.  If there's a change in an emergency, of course,

 8   I'll let everyone know.

 9              THE COURT:  Of course.

10        Ms. Ottolini, when will that be?  This is for disclosure

11   of Federal Rule of Evidence 404(b) evidence.

12              THE CLERK:  January 31st.

13              THE COURT:  Yes, okay.

14              MR. MARTIKAN:  Correct, yes.

15              THE COURT:  Something else, Ms. Ottolini?

16              THE CLERK:  Is time going to be excluded?

17              THE COURT:  Yes.  That was going to be my next point.

18        Would it be appropriate to exclude a period of time for

19   continuity of counsel in light of your request and personal

20   situation?

21              MR. BIGELEISEN:  Yes, of course, Your Honor.  I so

22   move.

23              THE COURT:  All right.  Do you agree with that?

24              MR. MARTIKAN:  Yes, Your Honor.

25              THE COURT:  Would you prepare the appropriate
```

1 stipulation and proposed order.

2        MR. MARTIKAN:  So would that be to exclude time to

3 the pretrial conference date of March 14th, Your Honor?

4        THE COURT:  I believe so.

5    Do you agree to that?

6        MR. BIGELEISEN:  Yes, of course.

7        THE COURT:  All right.  Yes.

8    Yes, Ms. Ottolini.

9        THE CLERK:  Just an estimated length of the trial.

10        THE COURT:  Very good.

11    How long do you think, from your perspective?

12        MR. MARTIKAN:  I think it would be at least seven

13 days -- nine days, Your Honor.  I'm sorry, it would be nine

14 days.

15        THE COURT:  Nine court days means spilling over

16 possibly to the third week.

17        MR. MARTIKAN:  Correct, possibly, yes.

18        THE COURT:  And, obviously, you don't have to put on

19 any defense if you don't want to, but from what you know about

20 the case and any defense you might put on, how much time would

21 you estimate?

22        MR. BIGELEISEN:  Perhaps a little bit longer, two or

23 three days.

24        THE COURT:  All right.  Why don't we say three trial

25 weeks to be safe, which would be 12 days.  If it goes into the

1  following week, it will just go into the following week.   And

2  we'll tell the jury, obviously.

3       But when we get into pretrial, although I don't give -- I

4  don't give mandatory deadlines in criminal cases, I will try to

5  give counsel as much as they can commit to the Court so that I

6  can tell the jury for purposes of hardship excuses, you know,

7  how long the case is going to last.   And usually give them the

8  outside prediction.

9       So you all should talk to each other about it and come up

10  with a fairly firm estimate so I can tell the jury how much

11  time they need to plan in case they have travel plans or

12  legitimate hardships.

13       So other than that, that's about all I have on my

14  calendar.   Of course, if for some reason I read the *Soto-Soto*

15  case and upon consideration of -- if I need a response from the

16  government, I'll ask for it.   And if I need anything else from

17  the parties, I'll ask for it.

18       So, obviously, all of this is contingent on the Court

19  going along with its tentative ruling and issuing an order

20  pretty quickly on the suppression motion.   If not, then we'll

21  go from there.

22       All right.   So the other thing I wanted to try and

23  anticipate any possible issues, logistical issues, given the

24  charges in -- is it Missouri? -- the delayed case with respect

25  to both this defendant and the other defendant who's not

1  charged here but who the government's papers indicate might be

2  a witness in this case.  You know, I don't want to see any

3  delay based on the unavailability of witnesses, because we've

4  given you plenty of time to anticipate and work with the other

5  jurisdictions to get the person here and make sure that this

6  defendant is here.

7      He's charged in the other jurisdiction, as well, right?

8          **MR. MARTIKAN:**  Correct.

9          **THE COURT:**  All right.  So you need to coordinate

10 with your counterpart.

11     Are those state charges or federal or both?

12         **MR. MARTIKAN:**  Both.  But, really, the state charges

13 are the issue.  But I will coordinate, Your Honor.

14         **THE COURT:**  Yeah, because I don't want there to be an

15 overlap.  Obviously, they can't take custody of the defendant

16 if he's in federal custody.  A state judge can't do that.

17         **MR. MARTIKAN:**  Of course.

18         **THE COURT:**  I want to make sure there's no logistical

19 problems.

20     All right.  Anything further from the government's

21 perspective?

22         **MR. MARTIKAN:**  No.  Thank you, Your Honor.

23         **THE COURT:**  You just need to do the stipulation and

24 order on the speedy trial.

25     Anything from the defendant's perspective?

```
 1          MR. BIGELEISEN:  No.  Thank you very much, Your
 2    Honor.
 3          THE COURT:  The Court appreciates the way counsel
 4    argued the motions very well, getting into the cutting-edge
 5    issues.  And I appreciate counsels' being fair and honest and
 6    clear with respect to these motions.  And we'll see what
 7    happens.
 8       All right.  Thank you very much.
 9          MR. MARTIKAN:  Thank you, Your Honor.
10          MR. BIGELEISEN:  Thank you very much, Your Honor.
11          (At 9:31 a.m. the proceedings were adjourned.)
12                        -   -   -   -
13
14
15                  CERTIFICATE OF REPORTER
16       I certify that the foregoing is a correct transcript
17    from the record of proceedings in the above-entitled matter.
18
19    DATE:   Monday, July 16, 2012
20
21                  /s/ Katherine Powell Sullivan
         _____
22       Katherine Powell Sullivan, CSR #5812, RPR, CRR
                    U.S. Court Reporter
23
24
25
```