```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

------------------------------)
                              )
UNITED STATES OF AMERICA,     )
                              )
             Plaintiff,       )
                              )
    v.                        )   No. Cr. 10-245 JSW
                              )
KENNETH KYLE,                 )
                              )
             Defendant.       )   San Francisco, California
                              )   Thursday, July 22, 2010
------------------------------)     (14 pages)


                     TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

For Plaintiff:        MELINDA L. HAAG, Esq.
                      United States Attorney
                      450 Golden Gate Avenue
                      San Francisco, California  94102
                 BY:  OWEN PETER MARTIKAN
                      Assistant United States Attorney

For Defendant:        David M. Bigeleisen Law Office
                      101 Howard Street
                      Suite 310
                      San Francisco, California 94105
                 BY:  DAVID MICHAEL BIGELEISEN
```

```
 1   Thursday, July 22, 2010
 2
 3              (Defendant present in court.)
 4          DEPUTY CLERK:  Cr. 10-245, United States vs.
 5   Kenneth Martin Kyle.
 6          Counsel, please step forward and state your
 7   appearances.
 8          MR. MARTIKAN:  Good afternoon, your Honor.  Owen
 9   Martikan for the United States.
10          THE COURT:  Good afternoon.
11          MR. BIGELEISEN:  David Michael Bigeleisen for
12   Mr. Kyle.  Mr. Kyle is coming right now.
13          THE COURT:  Very well.  Good afternoon.
14          Good afternoon, Mr. Kyle.
15          THE DEFENDANT:  Good afternoon, Sir.
16          THE COURT:  So what is the status of this case?
17   And how can we move the case forward?  This is the second
18   case, correct?
19          MR. BIGELEISEN:  Very well, your Honor.  Your
20   Honor, Mr. Martikan gave me a large amount of discovery
21   approximately eight weeks ago.  And I've gone through most
22   of it.  I've been going through it more slowly than I
23   expected to because I had a very bad fall and was injured
24   and it slowed me down.
25          Just a few days ago, he gave me some additional
```

1  discovery which I haven't had a chance to look at yet.
2  And there is a companion case in state court in Missouri.
3  I spoke with the prosecutor in the Missouri case this
4  morning, and she said to me that there was a large amount
5  of material that she had given to the government.
6  Mr. Martikan and I spoke just a few minutes ago.  He said,
7  That's very interesting; I haven't received it yet.  But
8  he and I both agree that we would both like to see what it
9  is.
10           Let me also remark on this in another way.  There
11  have been three searches that are critical in this case:
12  The first search of Mr. Kyle's apartment, the second of a
13  computer notebook and a cell phone at the airport when he
14  entered the country, and then a third search of his
15  apartment again.  And we're interested to find out whether
16  there was a Fourth Amendment violation in any of these,
17  and what effect it will have on the case.
18           My thought -- and I'm not prepared to be bound by
19  this -- but my thought is that it's the first search that
20  I'm most interested in.  And we need to do some figuring
21  out about the electronic investigation that the government
22  did in order to be able to prepare that in a way that will
23  be helpful to the Court.
24           So that's where we stand right now.
25           THE COURT:  All right.  Before I hear from you,

1   Mr. Martikan, what concerns the Court to some extent is
2   that the last time we met was in April, about three months
3   ago.  Almost -- close to the day.  April 29th was the last
4   setting of this case, and it doesn't sound like there's
5   been an awful lot of progress made toward getting the case
6   ready for the next stage.  It seems like virtually nothing
7   has happened, and you have all these searches I'm told
8   about and discovery that even the government was not aware
9   of, and from what defense counsel is saying, which the
10  court accepts, we're going to need to do a lot more
11  digging -- you don't even have -- the government doesn't
12  even have all the information which would be necessary to
13  tee up any alleged constitutional violations.  We're not
14  even in a position to set a motion schedule.  So with that
15  challenge, what do you have to say about that?
16              MR. MARTIKAN:  Well, let me take those searches
17  one by one.  Because to talk about the first search, which
18  counsel said he's most interested in, all that information
19  is done.  That -- the computer and the media that were
20  seized during that search have all been analyzed, reports
21  have been prepared.  It's ready for the defense expert to
22  look at, pursuant to the protective order.  The reports
23  have all been done.  That's actually finished.  It took a
24  long time because there was a very large amount of data on
25  the computer.  But that's done.

1            The second search at the airport, that work was
2    actually the first work to get done in this case.  So
3    that -- those reports have been done.  And again, under
4    the protective order, that media is ready to be looked at
5    by defense counsel and his expert.
6            The third search, that -- there's a laptop
7    computer that was seized during that search.  That
8    preliminarily has been looked at.  It was -- it wasn't
9    searched before the recent CDT protocol came out, but it
10   was searched in about a -- six weeks ago is when that
11   started.  My understanding is there's no contraband on
12   that computer.  So they're making sure there's no evidence
13   on there.  And then -- I think the intention is just to
14   return it.
15           THE COURT:  All right.
16           MR. MARTIKAN:  Now, what else is going on in this
17   case is that there's some evidence that has been dug up by
18   state authorities in Missouri, which I don't know what it
19   is.  Frankly, I'm happy to hear that they're sending me
20   something because that's the first I've heard of that.
21   And it's been a -- tough going getting things out of
22   there.  But -- I'm talking about the county now, not the
23   federal people in Missouri.
24           THE COURT:  And there's also a federal
25   prosecution, parallel federal prosecution in Missouri?

1       MR. MARTIKAN: There is, but there's nothing
2  pertaining to this defendant over there. That evidence is
3  actually all here.
4       THE COURT: All right.
5       MR. MARTIKAN: Now -- so I actually think -- I
6  don't know, I can't speculate what we might get from
7  Missouri. But I think it would be -- I don't think it
8  would pertain to a motion to suppress. I'm sure there'd
9  be some evidence, discoverable evidence, but not anything
10 pertaining to those searches.
11      THE COURT: All right. So to unpackage that --
12 what you just said -- so the next step would be, from the
13 government's perspective, is to turn over the results of
14 the two searches, correct?
15      MR. MARTIKAN: Well, actually, there's nothing to
16 turn over because we've turned over what we can turn over.
17 It's really, you know, when the defense is ready with
18 their expert to come and look at the actual contraband
19 itself.
20      THE COURT: What about the report?
21      MR. MARTIKAN: That has been -- I think the
22 report for the first search was among the material was
23 most recently turned over.
24      THE COURT: So you would say, the government's
25 position is then that in effect, as of today, other than

1   this alleged evidence from Missouri that's supposedly
2   being sent by state authorities to you, Mr. Martikan,
3   apparently the ball is really in the defendant's court to
4   have his expert review the original alleged contraband and
5   the report of the government's expert?  Is that correct?
6           MR. MARTIKAN:  Yes, that's correct.  I mean,
7   there's going to be -- there may be more discovery coming
8   in from Missouri.  The discovery that was very recently
9   turned over besides that report is what we finally got
10  from the SFPD, their reports from their search.  That's
11  been turned over.  So -- that was turned over recently.
12  So I think they need some time to look at that, but beyond
13  that, the bulk of the time is going to be for the defense
14  to take a look at the actual evidence.
15          THE COURT:  Have the reports that relate to the
16  searches, either whether they're -- these are warrantless
17  searches?
18          MR. MARTIKAN:  No, Search Number 1 was a -- was
19  done pursuant to a state warrant.
20          THE COURT:  All right.  And that information, the
21  warrant and the affidavit, report of it, have been
22  disclosed to the defendant?
23          MR. MARTIKAN:  Yes.  And that, the reports for
24  that were just most recently turned over.
25          THE COURT:  And the second one?

1  MR. MARTIKAN: The second one was a border
2  search. And that evidence was actually the earliest that
3  was processed and produced.
4  THE COURT: So that was a warrantless border
5  search?
6  MR. MARTIKAN: Correct.
7  THE COURT: And has the information, the report
8  relating to that search been disclosed to the defendant?
9  MR. MARTIKAN: Yes.
10  THE COURT: And the third one, you're believing
11  that that information, the computer will be returned and
12  that will not be an issue in the case, correct?
13  MR. MARTIKAN: That's my expectation, because the
14  third warrant, that was a federal search warrant search.
15  There was a laptop that was seized that I -- my
16  understanding is has no contraband on it, and maybe has no
17  evidence. So it probably will be returned.
18  Some other things were seized. The papers
19  were -- have been produced. Some objects were seized for
20  DNA testing. And that was actually -- we're waiting for a
21  sample of the infant victim's DNA from Missouri to compare
22  with the DNA on that.
23  THE COURT: All right.
24  MR. MARTIKAN: Those objects.
25  THE COURT: So, Counsel, with that information,

|   |   |
|---|---|
| 1 | the information with respect to the searches, either |
| 2 | having been made available or soon to be made available, |
| 3 | and -- I mean, the purported bases for the searches, |
| 4 | either the warrant or the report relating to the boarder |
| 5 | search, why can't we set a date for the filing of motions |
| 6 | to suppress, if that's what the defendant is intending to |
| 7 | do? |
| 8 |         MR. BIGELEISEN:  Well, let me perhaps answer why |
| 9 | we can't.  And that is the first search which was done by |
| 10 | the San Francisco Police Department was based on |
| 11 | information that the FBI gave to the San Francisco Police |
| 12 | of some information that they had gathered electronically, |
| 13 | and we are in the process of puzzling that out to find out |
| 14 | whether that evidence-gathering was a trespass upon the |
| 15 | Fourth Amendment or not.  And we don't really know whether |
| 16 | we have everything that we need for that or not. |
| 17 |         And that is our beginning points. |
| 18 |         Moving ahead a little bit, if the search that was |
| 19 | made by the San Francisco Police Department is defective, |
| 20 | then it may be that all of the remaining |
| 21 | information-gathering will fall as well, including that in |
| 22 | Missouri.  And so if that's the case, then it would be |
| 23 | good to have inventory of what it is that has been adduced |
| 24 | in Missouri so that we can inform the Court of what we |
| 25 | would like to have suppressed.  So -- I share that with |

1   you so you'll understand what our concerns are.

2          Let me also digress to say that I think that the
3   government has been reasonably diligent in being
4   forthcoming in providing these things to us, and so I
5   don't want the Court to think that we're saying other than
6   that.

7          That having been said, I spoke with Mr. Martikan,
8   and if it pleases the Court, I think that we should be
9   ready to come back on September 23rd to say that we're
10  ready to set dates.

11         THE COURT: That's too long. The defendant's in
12  custody. And although the charges are serious, with two
13  excellent counsel being involved on the two sides working
14  together to get the information ready, to come back just
15  to say we're going to push the case out even further is
16  not acceptable to the Court. Because we're talking really
17  about -- and I'm not criticizing you, Counsel, you need to
18  get the information -- but both of you need to work
19  together to get this information in a position where we
20  can litigate the constitutional issues. And it's,
21  realistically, given the Court's schedule -- we're not
22  talking about a big variance of -- I'm talking about
23  bringing you back in early September to set dates. So
24  that gives you roughly six or so weeks to get this done.
25  And it means, and it's intended to mean, that you need to

1  give this, both sides, need to give this a high priority.
2  It's a serious case with a lot of complicated issues and a
3  lot of intersecting sovereigns, if you will, and agencies,
4  and you need to work together, and the government needs to
5  work harder to get you the information that you need to
6  file.
7           Now, if the date has to be -- we'll be coming
8  back in early September, presumptively to set dates.  What
9  I'm going to want -- we'll set a date.  And in a
10 reasonable amount of time before that date, I want a joint
11 status report, by the parties, in a clean form, about
12 the -- your progress.  And in either event, I'll bring you
13 back in September, and it will be presumptively to set
14 dates, but if not, I'm going to want to hear, with a high
15 level of precision, a briefing schedule.
16          Whether it's set on that next date or some other
17 date, I don't want to have some sort of free-floating
18 anxiety to see where you are.  I want this case on the
19 front burner.
20          So, Miss Ottolini, let's -- perhaps September 2nd
21 will be the next -- do we have time on our calendar?
22          DEPUTY CLERK:  Yes.
23          MR. BIGELEISEN:  Your Honor, I have a court
24 appearance in state court at 1:30 on the 2nd.  Is the
25 Court available in the morning?

1           THE COURT:  Well, where is -- across the street?
2           MR. BIGELEISEN:  No, in Redwood City.
3           THE COURT:  Okay.
4           MR. BIGELEISEN:  Frankly, that was one of the
5    reasons we suggested the 23rd was we had simply compared
6    calendars.
7           THE COURT:  That's still too long.  I do want to
8    set this earlier to get us on a briefing schedule.  So can
9    we specially-set this at 10:00 in the morning or 9:00 in
10   the morning on that date?  Make it 9:00, to give counsel
11   more than enough time to get down to Redwood City.
12          MR. BIGELEISEN:  That would be fine.
13          THE COURT:  Are we in trial then, Miss Ottolini?
14          DEPUTY CLERK:  No.
15          THE COURT:  All right.  So what about that?
16          MR. MARTIKAN:  That's fine, your Honor.
17          THE COURT:  Should be a short proceeding, because
18   the work will have been done, and I'll want one week
19   before -- okay, more time, by Monday of that week, which
20   would be August what?
21          DEPUTY CLERK:  August 30th.
22          THE COURT:  The 30th, I'd like a joint status
23   report.  And that status report should include a briefing
24   schedule and a proposed hearing date for the motions to
25   suppress, and you can indicate as much as you know, how

```
 1   much time it's going to take, will there need to be an
 2   evidentiary hearing.  I know that may be contested, but
 3   you can give me your position and the government can give
 4   me their position so we'll know how many witnesses to
 5   prepare for and whether we need to specially set the
 6   hearing on the motion.  All right?
 7            MR. BIGELEISEN:  Very well.
 8            THE COURT:  All right.  And let me ask defense
 9   counsel:  Is this time appropriately excluded from the
10   Speedy Trial Act?
11            MR. BIGELEISEN:  Absolutely, for effective
12   representation.
13            THE COURT:  All right.
14            MR. BIGELEISEN:  Yes, Sir.
15            THE COURT:  Effective preparation.
16            So, Mr. Martikan, do you agree, and will you
17   prepare the appropriate findings in the proposed order?
18            MR. MARTIKAN:  I will, and I agree, your Honor.
19            THE COURT:  Again, looking to counsel, you've
20   heard the Court, I know there's -- there are things
21   arising that neither side anticipated, and the case is
22   very complex, but I think I've given you enough time.  You
23   at least have identified the issues before the Court to
24   work together to get all the information.  And I know
25   sometimes you don't have control over state sovereigns.
```

1   But the Court's position is at some point the government's
2   going to have to decide, you know, what it's going to go
3   on and what it's going to rely on, and some of it may not
4   be within your power to choose because if there's
5   something that you aren't getting which may impact
6   something that you are using, then you'll have to take
7   that into account in how this case is prosecuted.
8            All right?
9            All right.  So I think counsel have their, if you
10  will, marching orders, and we'll make progress.  I'll get
11  the status report, and then we'll set a hearing date, a
12  briefing schedule, and -- commensurate with counsels'
13  schedule and the Court's -- and we'll go from there.  All
14  right?
15           MR. BIGELEISEN:  Thank you very much, your Honor.
16           MR. MARTIKAN:  Thank you, your Honor.
17           MR. BIGELEISEN:  Thank you, Counsel.
18           (Adjourned)
19                            oOo

CERTIFICATE OF REPORTER

    I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into written form.

_____ *Connie Kuhl* _____

Connie Kuhl, RMR, CRR
Monday August 13, 2012