**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>KENNETH MARTIN KYLE,<br>*Defendant-Appellant*. | No. 12-10208<br><br>D.C. No.<br>3:10-cr-00245-<br>JSW-1<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
June 12, 2013—San Francisco, California

Filed October 30, 2013

Before: Marsha S. Berzon and Jay S. Bybee, Circuit Judges,
and Consuelo B. Marshall, Senior District Judge.[*]

Opinion by Judge Marshall

---

[*] The Honorable Consuelo B. Marshall, Senior District Judge for the
U.S. District Court for Central California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a guilty plea and sentence, and remanded with instructions for reassignment to a different judge, in a case in which the defendant argued that the district court prejudicially participated in his plea negotiations in violation of Fed. R. Crim. P. 11(c)(1).

Because the defendant can satisfy the plain-error standard of review, the panel assumed without deciding that plain error review is the proper standard for violations of Rule 11(c)(1).

The panel joined other circuits in holding that when a court goes beyond providing reasons for rejecting the plea agreement presented, and comments on the hypothetical agreements it would or would not accept, it crosses over the line established by Rule 11 and becomes involved in the negotiations.

Following *United States v. Davila*, 133 S. Ct. 2139 (2013), by reviewing the full record to determine the impact of the alleged violation on the decision to plead guilty, the panel held that the district court participated in the parties' plea discussions by prematurely committing itself to a sentence of a specific severity, and that the district court's participation prejudiced the defendant, where there was a reasonable probability that he would not have agreed to the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

terms of the second plea agreement absent the district court's remarks.

The panel believed that the appearance of justice will be best served by remanding to a different judge.

---

**COUNSEL**

Ethan A. Balogh, Coleman & Balogh LLP, San Francisco, California, for Defendant-Appellant.

Melinda Haag, Barbara J. Valliere, and Owen P. Martikan, Office of the United States Attorney, San Francisco California, for Plaintiff-Appellee.

---

**OPINION**

MARSHALL, District Judge:

Appellant-defendant Kenneth Martin Kyle pleaded guilty to one count of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c), for which he received a 450-month sentence. On appeal, Kyle argues his guilty plea and sentence must be set aside because the District Court impermissibly and prejudicially participated in his plea negotiations.

After hearing oral argument, we vacated submission and ordered supplemental briefing[1] following the Supreme Court's decision in *United States v. Davila*. 133 S. Ct. 2139, 186 L. Ed. 2d 139 (2013). The question presented in *Davila* was "whether . . . the violation of [Fed. R. Crim. P. ("Rule")] 11(c)(1) by the Magistrate Judge warranted automatic vacatur of Davila's guilty plea." *Id.* at 2143. The Supreme Court held that automatic vacatur is inappropriate, explaining that "vacatur of the plea is not in order if the record shows no prejudice to [the defendant's] decision to plead guilty." *Id.* at 2150. *Davila* abrogated the prior rule in this circuit that "Rule 11's ban [on judicial participation in plea negotiations is] an absolute command which admits of no exceptions." *Id.* at 2146 n.2 (quoting *United States v. Anderson*, 993 F.2d 1435, 1438–39 (9th Cir. 1993)) (alteration in original). Rather, the "reviewing court [must] consider all that transpired in the trial court" to assess the impact of the judge's error on the decision to plead guilty. *Id.* at 2148. We now follow *Davila* and review the District Court's alleged violation of Rule 11(c)(1) in light of the prejudice inquiry required. After careful consideration of the full record of this appeal, we find that the District Court participated in the parties' plea discussions by prematurely committing itself to a sentence of a specific severity. The District Court's participation prejudiced Kyle. We hold that Kyle's plea must be VACATED and this appeal REMANDED for further proceedings.

---

[1] While the parties disagree on the correct interpretation of *Davila*, neither requests additional opportunity for argument.

## I.

Kenneth Martin Kyle was an assistant professor of public affairs and administration at California State University, East Bay in Hayward, California. Kyle first came to the attention of the Federal Bureau of Investigation ("FBI") in December 2009 when an FBI agent using peer-to-peer file sharing software in an undercover capacity noticed a user with the moniker "cruelsob" sharing image and video files with titles indicative of child pornography. The agent downloaded 148 child pornography images and one video file containing child pornography from "cruelsob." Later investigation revealed that "cruelsob" was associated with Kyle. The FBI referred the case to the San Francisco Police Department ("SFPD") for further investigation.

The SFPD obtained a warrant and searched Kyle's apartment. Following the search, the SFPD arrested Kyle. An examination of text messages from Kyle's cell phone and images from his computer linked Kyle with a woman named Tessa Van Vlerah. Some of the images from Kyle's computer depicted Van Vlerah and her infant child engaged in sexual acts with an adult male whose face was not shown. Van Vlerah later identified Kyle as the adult male in the images and admitted that she and Kyle had molested the child.

Kyle was indicted on April 1, 2010 for one count of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c), and one count each for production, distribution, possession, and transportation of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252. Kyle and the government finalized the first plea agreement on May 26, 2011. Pursuant to the first plea agreement, Kyle agreed to

plead guilty to Count One, violation of 18 U.S.C. § 2241(c). In exchange, the parties agreed that the mandatory minimum penalty provided in 18 U.S.C. § 2241(c) of 360 months would be an appropriate custodial sentence.  The District Court accepted Kyle's guilty plea on May 26, 2011, but reserved ruling on the plea agreement pending the District Court's review of the Pre-Sentence Report.

On October 11, 2011, the District Court notified the parties of its intention to reject the first plea agreement.  On October 13, 2011, the date originally set for judgment and sentencing, the District Court explained that the plea agreement was too lenient, and expressed his view that, "[this case] warrants an above-guideline sentence, substantially above-guideline sentence, and not necessarily the statutory maximum [of life imprisonment]."  The District Court also stated

> [Y]ou may be acquitted . . . but if you are convicted, the seriousness of what you did to this little girl has to be reflected in the sentence, and the seriousness of some of the comments that you made that were fantasies has to be part of the sentence, and the seriousness of the uncharged conduct, all the child pornography that you possess, which is not part of the guideline calculation has to be taken into account.

The District Court allowed Kyle to withdraw his guilty plea.

On February 2, 2012, the District Court warned the parties that they should either prepare for trial or reach a plea

agreement.  Counsel for Kyle responded that "we still would
like to resolve the case without trial," and offered to provide
the District Court with more information on the potential
sentencing range by obtaining an actuarial calculation on an
effective life sentence for Kyle.  The District Court and
counsel then engaged in the following colloquy:

> **The Court:** Well, [the actuary] is and it isn't
> [helpful], because I said that the Court's view
> is that this man is never going to get out of
> jail, period.  So telling me that you're going to
> submit an evaluation of an actuary doesn't
> really help me because, quite frankly, given
> what I know about this case, I'm prepared to
> impose a life sentence.
>
> So if you want to go from that, you know,
> that's as much guidance as I'm allowed to
> give you without getting involved in the plea
> bargain process.  So in light of that, if the
> defendant wishes to go to trial and exercise all
> of his rights, then he should do so.
>
> So having an actuary tell me that he or she
> expects the defendant is going to live any
> particular length of time is not going to be
> much help to the Court unless you all come up
> with something creative that meets the Court's
> concern.
>
> The Court views the conduct as being among
> the most serious conduct that the Court has
> seen in a case, almost any case.  And, so,

Case 3:10-cr-00245-CRB  Document 93  Filed 11/14/13  Page 8 of 22

8            UNITED STATES V. KYLE

given that, that's my current view; and I have a lot of information that the Court, counsel, and the Probation Department have provided, but I would certainly be willing to entertain–you have the right to come in with any agreement you wish to and the Court will evaluate it on an individualized basis. . . .

**Counsel for Kyle:** Your honor, please forgive me, I don't mean to quarrel with the Court, but I want to clarify something.

When we were here last, my recollection . . . was the Court said a substantial departure above the guideline but less than life. And if I'm mistaken, please forgive me for speaking in that way, but that was the point of view that we had when we came in this afternoon.

**The Court:** All right. Well, I've given a lot more thought to this case. I did say that and my view has changed. And since the defendant hasn't changed his position in reliance on what I said, the record remains the same but the Court's view has changed. That's my current view.

And having said that, of course, if the parties–you know, the Government agreed to a 30-year sentence. If the parties can change the Court's mind with additional data and you come in with a plea, for example, with evidence to support the wisdom of the

agreement, then I would certainly consider it; but I think it's fair, in light of where we are, to give you the Court's current thinking based upon the information that it now has. And it's got more information than a typical case because we've been through this process of motions and input from the Probation Department.

So it may well be that you can convince the Court of something different, but that's my current view and I think you have a right to know that. So I'm not prohibiting you from coming to the Court with another agreement. If that's what you chose, the defendant chooses and the Government agrees, then please do so and have your data. . . .

**Counsel for Kyle:** Your Honor, we accept the Court's ruling on this.

I do want to comment that if this case is resolved without trial, it's a kindness to the child because it avoids having a record made of all of the things that have occurred in this case; and I think that that would be something that would be–if the record was made, I think that would be harmful to the child in the future, and that's one of the considerations. . . .

**The Court:** Right. That's a fair point. The other side of that is the thought of Mr. Kyle

being on the street while this child is alive, I
think is a real–is something that the Court has
great concern about.  If this man is out of jail
at any time during the lifetime of this child, I
think it's a very deleterious fact for this victim
child.

So there's both sides to the story and I'm
willing to hear arguments on both sides.  I'm
sure the Government will have input because
the Government has closest contact with the
victim and I'm not prejudging it, but I gave
you my inclination, and that's what we'll do.

On February 14, 2012, the parties provided a second plea
agreement to the District Court for its consideration.  Pursuant
to the agreement, Kyle would plead guilty to Count One,
violation of 18 U.S.C. § 2241(c).  Kyle agreed to an above-
Guidelines custodial sentence of 405-to-450 months
imprisonment (compared to a Sentencing Guidelines range of
324-to-405 months[2] and statutory range of 360-months-to-
life-imprisonment), ten years of supervised release, $100
special assessment fee, and $50,000 in restitution payments.

The District Court accepted the plea and the plea
agreement on March 8, 2012, sentencing Kyle to 450 months
imprisonment.  This appeal followed.

---

[2] Kyle argues that the Sentencing Guidelines range was miscalculated
below.  We do not reach this issue in light of our decision here.

## II.

This Court has jurisdiction under 28 U.S.C. § 1291.

## III.

The parties disagree on the correct standard of review for violations of Rule 11(c)(1) that were not raised before the District Court. The Supreme Court did not decide this issue in *Davila.* Having disapproved automatic vacatur of guilty pleas for violations of Rule 11(c)(1), the Supreme Court remanded all remaining issues to the Eleventh Circuit, including "case-specific arguments raised by the parties . . . [that Davila's] claim [should] be judged under the harmless-error standard of Rule 52(a) rather than the plain-error standard of Rule 52(b), the rule that ordinarily attends a defendant's failure to object to a Rule 11 violation." *Davila*, 133 S. Ct. at 2150.

Rule 52 establishes two standards of review for trial errors. Rule 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," while Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." "When Rule 52(a)'s 'harmless-error rule' governs, the prosecution bears the burden of showing harmlessness. When Rule 52(b) controls, the defendant must show that the error affects substantial rights." *Davila*, 133 S. Ct. at 2147 (citing *United States v. Vonn*, 535 U.S. 55, 62, 122 S. Ct. 1043, 152 L.Ed.2d 90 (2002)).

Generally, the plain-error rule applies where, as here, the defendant failed to raise the Rule 11 violation before the trial court. *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004) ("Because the claim of Rule 11 error was not preserved by timely objection, the plain-error standard of Rule 52(b) applies" to error in plea colloquy); *see also United States v. Bradley*, 455 F.3d 453, 461 (4th Cir. 2006) (applying plain-error review to an unpreserved Rule 11(c)(1) claim). Some courts of appeal, including this circuit, have recognized that it may be inappropriate to penalize a defendant for his counsel's failure to object to an error where such objection was either unlikely or futile.[3] Because we find that Kyle can satisfy the plain-error standard of review, we assume without deciding that

---

[3] A failure to raise a futile objection does not waive the objection. *See, e.g.*, *United States v. Smith*, 640 F.3d 580, 586 (4th Cir. 2011) *cert. denied*, 132 S. Ct. 430, 181 L. Ed. 2d 279 (2011) (defendant did not "waive[] the issue of the voluntariness of his guilty plea by failing to renew the objection as he entered that plea" where he had already repeatedly objected that he could not sign the plea agreement without meaningful representation); *United States v. Esquivel-Ortega*, 484 F.3d 1221, 1225 (9th Cir. 2007) (defendant need not renew his motion for acquittal because any renewal would be futile in light of the court's denial "a few moments earlier" of the defendant's motion for acquittal). In addition, the Tenth and D.C. Circuits have discussed in dicta equitable concerns with applying the plain-error standard to Rule 11(c)(1) violations. *See, e.g., United States v. Cano-Varela*, 497 F.3d 1122, 1132 (10th Cir. 2007) (noting in dicta that "we are hesitant to apply a [plain error] standard of review [of unpreserved Rule 11(c)(1) violations] when defense counsel did not object to receiving the court's help [to persuade defendant to plead guilty]."); *United States v. Baker*, 489 F.3d 366, 372 (D.C. Cir. 2007) (declining to decide whether plain error review is appropriate for unpreserved Rule 11(c)(1) violations but discussing potential unfairness to defendant).

plain error is the proper standard in this case, and proceed accordingly.

## IV.

Plain error is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights . . . . If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed.2d 860 (2002) (internal citations and quotations marks omitted); *United States v. Doss*, 630 F.3d 1181, 1193 (9th Cir. 2011), *as amended on reh'g in part* (Mar. 15, 2011). The key inquiry is whether "a defendant . . . [can] show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 76, 124 S. Ct. at 2336. In *Davila*, the Supreme Court emphasized the importance of a full-record assessment—under either harmless error or plain error review—to determine "whether it was reasonably probable," that but for the improper judicial interference, the defendant would have proceeded differently. 133 S. Ct. at 2150.

### 1. Plain Error

Rule 11 allows a district court to accept or reject a plea agreement but specifies that "[t]he court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). The rationale behind Rule 11(c)(1) includes: (1) preventing the "risk of coercing a defendant to . . . plead guilty," (2) protecting the "integrity of the judicial process," and (3) preserving "the judge's impartiality after the negotiations

are completed." *United States v. Bruce*, 976 F.2d 552, 556–57 (9th Cir. 1992) (emphasis omitted).  Rule 11(c)(1) seeks to prevent "judge[s] from shaping plea bargains or persuading the defendant to accept particular terms."  *See United States v. Frank*, 36 F.3d 898, 902 (9th Cir. 1994).  Our prior cases examining violations of Rule 11(c)(1) have addressed instances where the judge advised the defendant to plead guilty or negotiated parts of the plea agreement.  *See, e.g.*, *United States v. Gonzalez-Melchor*, 648 F.3d 959, 960 (9th Cir. 2011) ("appellate-waiver, negotiated by the district court at sentencing in exchange for a reduced sentence, is invalid and unenforceable"); *United States v. Garfield*, 987 F.2d 1424, 1426–27 (9th Cir. 1993) (district court erred by advising defendant on the merits of pleading guilty); *United States v. Anderson*, 993 F.2d 1435, 1436–38 (9th Cir. 1993) (judge violated Rule 11 by stating before plea agreement had been reached that he would not accept anything less than a guilty plea to all counts charged) *abrogated by Davila*, 133 S. Ct. 2139 (2013); *United States v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992) (judge violated Rule 11 by encouraging defendants to take the plea bargain rather than go to trial).

We take this opportunity to emphasize that Rule 11(c)(1) is intended to eliminate all judicial pressure from plea discussions. *See, e.g., United States v. Werker*, 535 F.2d 198, 203 (2d Cir. 1976).  We join other circuits in holding that "[w]hen a court goes beyond providing reasons for rejecting the agreement presented and comments on the hypothetical agreements it would or would not accept, it crosses over the line established by Rule 11 and becomes involved in the negotiations." *United States v. Crowell*, 60 F.3d 199, 203 (5th Cir. 1995); *see also United States v. Kraus*, 137 F.3d

447, 454 (7th Cir. 1998); *Werker*, 535 F.2d at 203 ("[T]he judge's indication of sentence necessarily constitutes 'participat(ion) in such discussions.'") (alteration in original).

The government argues that the District Court's February 2, 2012 remarks "were not made while any plea offer was pending." While this is not disputed, nonetheless the District Court may not indicate what it might find acceptable or unacceptable in resolving the case.[4]

The government further argues that any error was invited error, comparing this case to *United States v. Frank*, 36 F.3d 898 (9th Cir. 1994). In *Frank*, as here, the primary issue on appeal was whether the district court judge improperly participated in the parties' plea discussion. The Court focused on an in-chambers discussion among counsel and the judge that occurred after the parties reached a plea agreement during a jury trial. 36 F.3d at 903. When the judge was informed of the plea agreement, he inquired about the terms of the plea agreement to determine whether it was acceptable. *Id.* Once he understood the terms of the plea agreement, the judge agreed to send the jury home and arrange a change of plea for the following day. *Id.* As the parties were leaving chambers, defense counsel asked the judge what he would have done in the absence of a plea agreement. *Id.* The judge replied that he would have sentenced defendant to life

---

[4] As the 1974 commentary to Rule 11 explained, "[w]hen a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not." Fed. R. Crim. P. 11 advisory committee's note (1974 amendment) (citing *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y. 1966) (Weinfeld, J.)).

Case 3:10-cr-00245-CRB  Document 93  Filed 11/14/13  Page 16 of 22

16          UNITED STATES V. KYLE

imprisonment. *Id.* This Court held that the district judge did
not overstep the bounds of Rule 11(c)(1) because the judge
was also obligated by Rule 11 to accept or reject the parties'
plea agreement, and was not required to postpone trial to
reject a plea agreement. *Id.* The Court also held that the
district judge did not err in answering defense counsel's
inquiry because the plea agreement was final, and concluded
that even if the answer was an error, it was invited error. *Id.*

In contrast to *Frank*, the District Court's February 2
remarks were made immediately after defense counsel
informed the court that "we still would like to resolve the case
without trial." The transcript of the February 2 status
conference proceedings do not reveal any inquiry from
counsel inviting the District Court's remark that "I'm
prepared to impose a life sentence."[5] The District Court's
February 2 remarks track the hypothetical Rule 11(c)(1)
violation outlined by this Court in *Frank*: "Had the judge
suggested a change of plea, and given force to his suggestion
by saying that the defendant faced life if he went to a verdict
and lost, but would get a lesser sentence if he pleaded guilty
now, [then the court would have improperly participated in
plea discussions]." *Id*. at 903. Considering all that transpired
in the District Court, the district judge's remarks emphasized
to Kyle that his only chance to escape a life sentence would
be to accept a plea agreement for a substantially longer

---

[5] The government cites defense counsel's inquiry from the October 13
status conference as the "invitation": "[i]f the Court feels comfortable
giving us an indication of what it has in mind, we would be very grateful,
and if [the] Court finds that it's improper for me to speak in that way,
please find fault with me and not with Mr. Kyle." We find it implausible
that a question asked in October 2011 could "invite" a response in
February 2012.

sentence than the 360-month sentence rejected in the first plea agreement.[6]

Two cases from our sister circuits, *Crowell* and *Kraus*, were decided on facts more similar to those here and illustrate the district court's obligation to avoid imposing "implicit or explicit pressure to settle criminal cases on terms favored by the judge." *Frank*, 36 F.3d at 903.

In *Crowell*, the defendant was charged with multiple counts of fraud arising from a fraudulent investment scheme that spanned five years and involved more than 160 victims. 60 F.3d at 199. The parties reached a plea agreement, and the district judge accepted the defendant's guilty plea subject to a later determination on whether to accept the plea agreement. *Id*. at 201. After further consideration, the district judge rejected the plea agreement as too lenient. *Id.* at 202. The parties reached a second plea agreement, and before it was in final form, contacted the district judge for his views. *Id*. The district judge remarked that he "felt that a sentence significantly in excess of what [the defendant] likely would serve under the prior plea of guilty and plea agreement would be required for the sentence to adequately address his criminal conduct." *Id*. The Fifth Circuit Court of Appeals held that such an "indicat[ion of] the court's feeling that a penalty

---

[6] While the record also reflects the District Court's statement that it would evaluate any agreement "on an individualized basis," seeming to hold open the possibility that "the parties can change the Court's mind with additional data," the District Court's contemporaneous statement that "it[] [had] more information than a typical case because we've been through this process of motions and input from the Probation Department" emphasized the unlikelihood of such a change and further underlined the District Court's premature commitment to a life sentence.

18            UNITED STATES V. KYLE

significantly more severe than that allowed under the first
plea agreement would be necessary for an agreement to be
acceptable . . . . is precisely th[e] type of participation that is
prohibited by Rule 11." *Id*. at 204.

In *Kraus*, the defendant's original prison term for
distribution of cocaine was vacated pursuant to 28 U.S.C.
§ 2255, and the case was returned to the district court for
resentencing. 137 F.3d at 448–49. The parties reached a plea
agreement. *Id*. As in *Crowell*, the district court rejected the
first proposed plea agreement as too lenient, stating "the low
end of the guideline range would never be sufficient
punishment under the circumstances." *Id*. at 449–50.
Following additional discussions, the government contacted
the district court judge's "room clerk" and disclosed a new
proposed sentence. The clerk responded that the sentence
might have "credence." *Id*. at 451. The government then
conveyed both the proposal and the clerk's reaction to defense
counsel. *Id*. Defense counsel urged defendant to accept the
proposed sentence, in part due to the clerk's reaction. *Id*. The
Seventh Circuit Court of Appeals held that "the conversation
between the prosecutor and the clerk influenced the parties'
subsequent negotiation and finalization of the revised plea,"
and violated Rule 11(c)(1). *Id*. at 456. In so holding, the
Seventh Circuit observed that "[t]he rule is focused on
pressures—blatant or subtle—that the judicial office brings to
bear on the process of negotiating a plea." *Id*. at 457.

Together, *Frank*, *Crowell*, and *Kraus* illustrate that a
district court violates Rule 11(c)(1) whether the court
encourages a defendant to plead guilty or, as was the case in
*Crowell* and as is the case here, commits itself to a "sentence
of at least a certain level of severity." *Crowell*, 60 F.3d at

205. We agree with the Fifth and Seventh Circuits that judicial remarks directed to future or ongoing plea negotiations "which suggest what will satisfy the court transform the court from an impartial arbiter to a participant in the plea negotiations." *Kraus*, 137 F.3d at 455. We hold that the District Court erred in doing so here, and that the error was plain. *See United States v. Hope*, 545 F.3d 293, 297 (5th Cir. 2008) (holding district court committed plain error even though there was no directly controlling authority, where "a confluence of . . . sister circuits have answered [the] question" and the circuit "has addressed closely related issues").

## 2. Affecting Substantial Rights

To show that a plain error has affected substantial rights, the defendant seeking relief must show "a reasonable probability that but for [the error claimed], the result of the proceeding would have been different." *Dominguez Benitez*, 542 U.S. at 81–83, 124 S. Ct. at 2339–40 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (alteration in original) ("[A] defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea")). The record here not only supports such a "reasonable probability," but the government's February 14, 2012 letter in support of the second plea agreement demonstrates that satisfying the district judge's concerns was foremost in the minds of both parties. First, Kyle's Sentencing Memorandum makes it clear that Kyle, aged 46 at the time of his arrest, desired a sentence that left him some hope of completing his sentence and leaving prison alive. Had Kyle been sentenced to 360-months

imprisonment pursuant to the first plea agreement, assuming no credits, he would have been approximately 76 years old upon release. Second, the parties reached the second plea agreement approximately twelve days after the District Court's February 2 remarks. *Cf. Davila*, 133 S. Ct. at 2149 (three month interlude). The second plea agreement is substantially the same as the first plea agreement, with the critical exception of increasing the agreed sentence from 360 months to 405 to 450 months. Absent the District Court's remarks, it is unlikely Kyle would have so quickly agreed to a significant extension of his custodial sentence in exchange for no additional benefit. Further, the government's February 14, 2012 letter to the District Court, enclosing the second plea agreement, clearly appealed to the priorities set by the District Court on February 2, stating "[i]t is difficult to argue that this defendant deserves a lighter sentence than life in prison, and the United States does not make that argument here." We hold that Kyle has demonstrated a "reasonable probability" that he would not have agreed to the terms of the second plea agreement absent the District Court's remarks.

### 3. Fairness, Integrity, and Public Reputation of Judicial Proceedings

Finally, as to whether Kyle has demonstrated that the court's error has "seriously affected the fairness, integrity or public reputation of judicial proceedings," *United States v. Benz*, 472 F.3d 657, 659 (9th Cir. 2006), we hold that he has satisfied this requirement. *See Bradley*, 455 F.3d at 463 ("failure to notice this sort of clear Rule 11 error would almost inevitably seriously affect the fairness and integrity of judicial proceedings"). The District Court's February 2

remarks would be reasonably perceived by a defendant as inconsistent with the court's role as a neutral arbiter of justice.

## V.

Kyle requests remand to a different district judge. "We may remand to a different district judge if a party can show personal biases or unusual circumstances, based on an assessment of three factors: (1) whether on remand the district judge can be expected to follow this court's dictates; (2) whether reassignment is advisable to maintain the appearance of justice; and (3) whether reassignment risks undue waste and duplication." *United States v. Lyons*, 472 F.3d 1055, 1071 (9th Cir. 2006) *as amended on reh'g in part* (Jan. 11, 2007) (citing *United States v. Peyton*, 353 F.3d 1080, 1091 (9th Cir. 2003)). "Because factors one and two are of equal importance, a finding of either factor supports remand to a different district court judge." *United States v. Atondo-Santos*, 385 F.3d 1199, 1201 (9th Cir. 2004). In this situation, we believe that the appearance of justice will be best served by remanding to a different judge. Furthermore, the original judge has already expressed his view of the appropriate sentence for Kyle, and explained what plea agreements he would and would not accept. Even on remand, these statements would have an unavoidable impact on a new round of plea negotiations. We will therefore remand this case to a different judge.

## VI.

For the foregoing reasons, we **VACATE** Kyle's plea and sentence and **REMAND** with instructions that this case be reassigned in accordance with local court rules for further

proceedings consistent with this opinion.  We need not reach Kyle's remaining arguments on appeal.