COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
EVAN C. GREENBERG, No. 271356
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Phone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
KENNETH MARTIN KYLE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>KENNETH MARTIN KYLE,<br><br>　　　　　　Defendant. | Case No. 10 Cr. 245 CRB<br><br>DEFENDANT KENNETH MARTIN KYLE'S SENTENCING MEMORANDUM<br><br>Date:　December 16, 2015<br>Time:　12:00 p.m.<br><br>Before the Honorable Charles R. Breyer<br>United States District Judge |

3:10-cr-00245-CRB

## I. Preliminary Statement

Defendant Kenneth Martin Kyle, by and through his counsel, respectfully submits the following Sentencing Memorandum.[1] Mr. Kyle comes before the Court having pleaded guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 2241(c).  *See* ECF No. 118.

The United States Sentencing Guidelines advise a sentence of 210-262 months.  Pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a), Mr. Kyle respectfully asks the Court to impose a sentence of 360 months' imprisonment, with the sentencing recommendations as set forth in paragraphs 8 and 17 of the plea agreement,[2] 10 years of supervised release, restitution in the amount of $50,000, and a $100 special assessment ("the recommended sentence").

## II. Overview

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Pepper v. United States*, 562 U.S. 476, 477 (2011).  "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime."  *Id*. at 477-78 (internal quotations and citation omitted).

This Court has broad discretion to sentence Mr. Kyle within the sentencing range applicable to the count of conviction.  After the sea change occasioned by *Booker*, this Court again stands as the arbiter of a just and proper sentence, empowered and required to "make an

---

[1] The Government's Sentencing Memorandum suggests sentencing shall occur on December 16 at 10 a.m.  ECF No. 119.  Mr. Kyle understands that he shall proceed to sentencing at noon that day.  ECF No. 117; *see also* http://www.cand.uscourts.gov/CEO/cfd.aspx?7134.

[2] These recommendations are that: (a) the sentence in this case run concurrently with a 30-year state sentence in Missouri, (b) Mr. Kyle participate as soon as possible after sentencing in the Bureau of Prisons' ("BOP") Residential Sex Offender Treatment Program ("RSOT") (c) the BOP designate Mr. Kyle to a facility that offers the RSOT while he awaits his assignment to the program, and (d) upon Mr. Kyle's completion of the RSOT, the BOP designate Mr. Kyle to complete his sentence in the custody of the Missouri Department of Corrections.  ECF No. 118 at ¶¶ 8, 17.

individualized assessment" of a just sentence pursuant to the factors presented in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007). This return of broad discretion is appropriate because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Id*. at 51-52.

The Supreme Court's "post-*Booker* opinions make clear that, although a sentencing court must 'give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well.'" *Pepper*, 562 U.S. at 490 (quoting *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). Accordingly, "'although the Guidelines should be the starting point and the initial benchmark,' district courts may impose sentences within the statutory limits based on appropriate consideration of all the factors listed in [18 U.S.C.] § 3553(a), subject to appellate review for 'reasonableness.'" *Id*. (quoting *Gall*, 552 U.S. at 49-51).

The Court is thus charged to "impose a sentence sufficient, *but not greater than necessary*, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *Kimbrough*, 552 U.S. at 101 (internal quotation marks and citation omitted) (emphasis added); *see also* 18 U.S.C. § 3553(a). Accordingly, Mr. Kyle addresses the section 3553(a) factors in turn, so that the Court may make an individualized assessment of the appropriate sentence here.

### III.  The Section 3553(a) Factors

**A.  Section 3553(a)(1).**

Section 3553(a)(1) directs the Court to evaluate "[t]he nature and circumstances of the offense and the history and characteristics of the defendant."

**1.  The history and characteristics of Kenneth Martin Kyle.**

The "unique study in the human failings" presented by this case reflects a socially unhealthy childhood leading to severe depression and increasingly deviant behavior as an adult. The unhealthy childhood stemmed from his parents: an alcoholic, abusive father and a mother

who suffered clinical depression. ECF No. 50 at 2; PSR ¶ 69. His mother, rather than shepherd Mr. Kyle through these challenges, used Mr. Kyle to alleviate her own emotional issues. PSR ¶ 69.

His parents also planted the seeds for what eventually blossomed into Mr. Kyle's downfall—his warped experiences with sexuality and his failure to develop healthy emotional intimacy. His parents never displayed normal affection; they created a "sexually puritanical" home life and offered as "the only expression of sexuality[:] . . . abus[e]." ECF No. 50 at 8; PSR ¶ 71.

These circumstances led to Mr. Kyle's depression, *see* PSR ¶¶ 79-80, which fostered feelings of helplessness, and, alarmingly in hindsight, social alienation and "overwhelming feelings of loneliness and inadequacy." ECF No. 50 at 9. People who feel so alienated commonly turn to computers and the internet to find the connections absent from their experiences in the real world, and Mr. Kyle fit this mold. ECF No. 50 at 9.

Online, Mr. Kyle first sought sexual satisfaction through pornography. *Id.*; PSR ¶ 72. He pushed further into new experiences, ratcheting up his behavior as he sought satisfaction that never arrived, and he allowed others to set the boundaries of "acceptable" conduct. PSR ¶ 72. This practice, perhaps unsurprisingly, connected Mr. Kyle with people involved with child pornography, and ultimately led Mr. Kyle to his offense conduct and his guilty plea.

Despite his troubled childhood and adult depression, Mr. Kyle nonetheless excelled professionally and contributed to his community. He earned a Ph.D. and became an assistant professor at California State University (East Bay). PSR ¶¶ 85, 87. He volunteered for Habitat for Humanity, Amnesty International, and the East Bay Community Development and Leadership Initiative. PSR ¶ 74. Fourteen people submitted letters of support to this Court during Mr. Kyle's initial sentencing, reflecting a caring man who did so much good in his life that people, despite Mr. Kyle's offense, offered him their support in his time of need. ECF No. 50 at 13-34.

Looking forward, the two mental health professionals who evaluated Mr. Kyle concluded that his depression contributed to his offense conduct, and that he is amenable to treatment. ECF No. 50 at 9. Such treatment is part of the recommended sentence. ECF No. 118 at ¶¶ 8, 17.

**2.     The nature and circumstances of the offense.**

Section 3553(a)(1) also directs the Court to evaluate the nature and circumstances of Mr. Kyle's offense. A summary of the facts of the case appears in the Government's October 2012 sentencing memorandum. ECF No. 51 at 2-4. Mr. Kyle adopted this version of the facts in his Opening Brief to the Ninth Circuit, *see* USCA No. 12-10208, Dkt. 15 at 9-12, and he does so here as well. In brief, the FBI noticed someone using file-sharing software to share child pornography, and traced that user's IP address to Mr. Kyle's physical address in San Francisco. ECF No. 51 at 2-4. Law enforcement then executed a warrant search of Mr. Kyle's home, and then subsequently conducted an airport search when Mr. Kyle returned to San Francisco from Germany. *Id.* The searches revealed text messages to Tessa Van Vlerah in St. Louis, and good police work uncovered the crime of conviction. *Id.* When confronted, Van Vlerah admitted to law enforcement agents that she permitted Mr. Kyle to abuse her child. PSR ¶ 17.

Mr. Kyle's conduct was most certainly serious, and he respectfully contends that the section 3553(a)(1) factors support the imposition of the recommended sentence—nearly 10 years above the Guidelines recommendation—as "sufficient, but not greater than necessary" to address his misconduct. In sum, years ago, the Government and Mr. Kyle agreed that a 30-year term constituted a reasonable and appropriate sentence. ECF No. 43. After intervening events, including the Ninth Circuit's vacatur of Mr. Kyle's federal conviction, the State of Missouri reached a plea agreement with Mr. Kyle for offenses stemming from the same conduct at issue here; the State of Missouri deemed a term of 60 years sufficient. *See* ECF No. 104-2 at 7. Now, having returned to this Court, the parties agree, and ask the Court to find, that a concurrent term of 30 years, in combination with the other aspects of the recommended sentence, is sufficient but not greater than necessary, and constitutes an appropriate sentence under 18 U.S.C. § 3553(a)(1).

**B.     Section 3553(a)(2).**

Section 3553(a)(2) directs the Court to evaluate a sentence sufficient to "(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner." As the Supreme Court in *Kimbrough* made plain, the Court should fashion a "a sentence sufficient, but not greater than necessary" to meet these goals. 552 U.S. at 101.

In this case, Mr. Kyle respectfully submits that the recommended sentence is "sufficient, but not greater than necessary" to satisfy each of the section 3553(a)(2) factors. He has already been incarcerated since his arrest in March 2010, *see* PSR at 1, and because Mr. Kyle is 51 years old, the recommended sentence will keep him in prison for the great majority, if not all, of his remaining years. This 30-year term affords adequate deterrence and protects the public. It also provides Mr. Kyle with the hope that he can perhaps live long enough to see his release, assuming of course that he can prove his rehabilitation, obtain parole from Missouri, and avoid a lifetime of civil commitment pursuant to the Adam Walsh Act. This possibility gives Mr. Kyle the incentive to seek treatment in prison and effect positive change in himself and others. He has already begun this process by demonstrating remorse and accepting responsibility for his offense. *See* PSR ¶ 55; ECF No. 50 at 3.

**C.      Sections 3553(a)(3), 3553(a)(4), 3553(a)(5).**

Sections 3553(a)(3) through (a)(5) direct the Court to assess the kinds of sentences available statutorily and in accordance with the Sentencing Guidelines, as well as the policy statements and amendments issued by the United States Sentencing Commission. This section gives effect to *Kimbrough*'s directive for this Court to consider the advisory Guidelines like the rest of the section 3553(a) factors.

Mr. Kyle has no criminal history, scores zero points, and falls in Criminal History Category I. PSR ¶ 64. With the agreed-upon adjusted offense level of 37, *see* ECF No. 118 at ¶ 7, the Guidelines range is 210-262 months. But the statute of conviction calls for a 30-year minimum term. 18 U.S.C. § 2241(c). Thus, the recommended sentence is consistent with the "kinds of sentences available," and exceeds the high end of the Guidelines range by 98 months. *See* 18 U.S.C. § 3553(a)(3), (5).

////

////

### D. Section 3553(a)(6).

Section 3553(a)(6) directs the Court to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The recommended sentence is consistent with sentences other offenders received for violating section 2241(c). *See, e.g.*, *United States v. Little Owl*, 475 F. App'x. 185 (9th Cir. 2012) (affirming 168-month sentence for violation of 18 U.S.C. §§ 1153(a) and 2241(c)); *United States v. Hisbadhorse*, 474 F. App'x 533 (9th Cir. 2012) (affirming 360-month term for aggravated sexual assault in violation of 18 U.S.C. §§ 1153 and 2241(c), and abusive sexual contact, in violation of 18 U.S.C. §§ 1153(a) and 2244(a)(5)); *United States v. Lyons*, 363 F. App'x 485 (9th Cir. 2010) (affirming 360-month sentence for aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153(a) and 2241(c)); *United States v. Lamere*, 337 F. App'x 669 (9th Cir. 2009) (affirming 360-month sentence for violation of section 2241(c)).

Offenders in other circuits have received similar sentences. *See, e.g.*, *United States v. White Bull*, 646 F.3d 1082, 1096 (8th Cir. 2011) (affirming 360-month sentence for violating 18 U.S.C. § 2241(c)); *United States v. King*, 604 F.3d 125, 134, 146 (3d Cir. 2010) (same).

Based on this presentation, Mr. Kyle contends that the recommended sentence would not cause unwarranted sentencing disparities.

### E. Section 3553(a)(7).

The last section 3553 factor requires the Court to consider "the need to provide restitution to any victims of the offense," and Mr. Kyle agrees to restitution in the amount of $50,000. ECF No. 118 at ¶ 8.

## IV. Objections to the PSR

United States Probation Officer Charles Mabie prepared the PSR in this case in September 2011, and Mr. Gibson objects to the Guidelines calculation in the PSR, which is four years old. But it now appears that Mr. Kyle, the Government, and Officer Mabie agree on the Guidelines calculation. Officer Mabie submitted on this day a letter to the Court reciting the Guidelines application as set forth in the plea agreement, and advising this Court that he "agrees with these calculations." Mr. Kyle therefore offers these objections to the PSR with the

understanding that United States Probation, by agreeing with the parties' calculation in the plea agreement, has implicitly disclaimed the Guidelines calculation in the PSR.  Nevertheless, Mr. Kyle, as he must, lodges his formal objections to the PSR.

**Objection No. 1**

Mr. Kyle objects to the PSR's application of the cross-reference in U.S.S.G. § 2A3.1(c)(2).  *See* PSR ¶ 46.  This cross-reference applies when the offense involved "causing" "a minor to engage in sexually explicit conduct *for the purpose of* producing a visual depiction of such conduct"; in such circumstance, courts should apply U.S.S.G. § 2G2.1.  *See* U.S.S.G. § 2A3.1(c)(2) (emphasis added).  "The decision to apply a guideline cross-referenced within another guideline is fact-dependent."  *United States v. Morgan*, 164 F.3d 1235, 1238 (9th Cir. 1998).  "Thus, the fact-dependent inquiry focuses on determining whether the acts [Mr. Kyle] committed constitute" causing a minor to engage in "sexually explicit conduct *for the purposes of* producing a visual depiction of such conduct."  *Id.*; U.S.S.G. § 2A3.1(c)(2) (emphasis added).

The facts of this case do not support that conclusion.  Rather, the record demonstrates that Mr. Kyle's misconduct focused on the abuse of the child, not on the production of visual materials.  *See, e.g.*, ECF No. 51 at 4 (USA's Sentencing Memorandum) ("Kyle apparently emailed pictures of the abuse to Tessa, but the United States has found no evidence that Kyle distributed the pictures to the world at large."); *see also* PSR ¶¶ 17-29.  Most bluntly, the facts demonstrate that Mr. Kyle's animus was the abuse itself—thus making him liable for that abuse under the applicable Guideline § 2A3.1—and his incidental photographing of those acts does not alter his conduct from (a) being motivated by abuse to (b) being motivated by the production of sexually explicit materials.

**Objection No. 2**

Mr. Kyle objects to the PSR's application of a two-level increase for under U.S.S.G. § 2G2.1(b)(6).  *See* PSR ¶ 50.  This Guideline applies if the offense involved (A) the knowing misrepresentation of a participant's identity, or (B) the use of computer or interactive computer service *to* either (i) "*persuade, induce, entice, coerce, or facilitate the travel of*, a minor to engage in sexually explicit conduct, *or* to otherwise *solicit participation by a minor in such*

*conduct*; or (ii) *solicit participation with a minor in sexually explicit conduct*[.]" U.S.S.G. § 2G2.1(b)(6) (emphases added).  The facts of this case do not support this two-level increase.  The Government does not contend, and the evidence does not demonstrate, that Mr. Kyle misrepresented his identity, so part "(A)" does not apply.  And the Government's seizure of Mr. Kyle's electronic media has not revealed even one email or other exchange in which Mr. Kyle solicited the minor's participation via computer, so part "(B)" does not apply.  Rather, regarding computer use, the evidence shows at most that Mr. Kyle and Van Vlerah met online and exchanged emails that *did not* include any solicitation.

## V. Conclusion

For these reasons, Kenneth Martin Kyle respectfully asks the Court to impose the recommended sentence.

Respectfully submitted,

DATED: December 9, 2015          COLEMAN & BALOGH LLP

*/s/ E A Balogh*
By: ETHAN A. BALOGH
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Direct: 415.391.0441

Attorneys for Defendant
KENNETH MARTIN KYLE

# **PROOF OF SERVICE**

I, Ethan A. Balogh, certify that on the date set forth below, I served all parties in this matter by causing the preceding pleading to be filed electronically, as set forth by Local Rule 5-1.

Dated: December 9, 2015

*/s/ E A Balogh*
ETHAN A. BALOGH